No. 44,981

Marvin H. Talley, *Appellee,* v. The Skelly Oil Company, a Corporation, Dennis Dressler, d/b/a Dressler and Company, and Avalon Heating and Air Conditioning, Inc., a Corporation, *Appellants.*

(433 P. 2d 425)

Opinion filed November 13, 1967.

*Sam Oliver,* of Tulsa, Oklahoma, and *Arthur L. Claussen,* of Topeka, argued

the cause, and *A. Harry Crane, Ward D. Martin, Harvey D. Ashworth,* and *John R. Hamilton,* all of Topeka, were with them on the brief for the appellant, The Skelly Oil Company.

*Herbert A. Marshall,* of Topeka, argued the cause, and *Doral H. Hawks, E. Gene McKinney,* and *Wayne E. Hundley,* all of Topeka, were with him on the brief for the appellant, Dennis Dressler, d/b/a Dressler and Company.

*John A. Bausch,* of Topeka, argued the cause; and *L. M. Ascough* and *J. H. Eschmann,* both of Topeka, were with him on the brief for the appellant, Avalon Heating and Air Conditioning, Inc.

*Charles H. Rooney, Sr.,* of Topeka, argued the cause, and *Charles H. Rooney, Jr.,* and *Arthur A. Glassman,* both of Topeka, were with him on the brief for the appellee.

*C. J. Putt, O. B. Eidson, Clayton M. Davis,* all of Topeka, and *Henry V. Gott* and *Ralph M. Hope,* both of Wichita, were on the brief *amici curiae.*

The opinion of the court was delivered by

FONTRON, J.: This action was instituted by the plaintiff, Marvin H. Talley, to recover damages for personal injuries suffered when an overhead heater slipped from its moorings and fell, striking him in the back. A substantial judgment was recovered against all three defendants and they in unison have appealed.

At the time of the accident plaintiff operated the Skelly service station at the intersection of Topeka Avenue and Fourth Street in the city of Topeka, having subleased the station from the defendant, Skelly Oil Company which, in turn, had leased the property from its owner, Harold E. Doherty. The defendant, Dennis Dressler, d/b/a Dressler and Company, is the general contractor who constructed the building while the defendant, Avalon Heating and Air Conditioning, Inc., installed the offending heater under a subcontract with Dressler. For convenience, as well as for clarity, the plaintiff and appellee, Talley, will be referred to herein as plaintiff, while the defendants and appellants will be designated as Skelly, Dressler and Avalon, respectively.

On June 1, 1961, Doherty and Skelly entered into a lease agreement under the terms of which Doherty was to construct a special type filling station in accordance with plans and specifications furnished by Skelly. On completion of the building, Skelly was to have ten days for inspection and if the building was found to comply with Skelly's plans and specifications which were to be furnished to Doherty, Skelly was to take possession for a primary term expiring May 31, 1971, at a specified monthly rental plus a percentage on gallonage above a specified base figure.

In due course Doherty let a contract to Dressler for erecting the station and Skelly thereupon provided the plans and specifications to be followed. The plans called for two overhead heaters, but contained no directions or specifications for attaching the same to the building. Dressler, the general contractor, in his turn, subcontracted the heating work, including installation of the heaters, to Avalon.

During the period of construction Skelly furnished one of its own employees to inspect and supervise the job, who from time to time would advise Doherty whether the work was being performed properly and whether bills submitted by Dressler should be paid. Before final payment for the job was made to Dressler, Skelly's inspector undertook a final inspection, in company with Dressler, after which he approved the job for final payment and accepted the building as meeting Skelly's specifications. In this inspection a printed checklist was used and completed.

Skelly took possession of the filling station on approximately November 1, 1961, after its inspector had given it his final approval. On November 17, 1961, Skelly subleased the station to plaintiff on a Skelly Oil Company printed lease form which contained an exculpatory clause which will later be referred to in detail.

Plaintiff took immediate possession of the station under his lease and was operating the same when the accident occurred on October 28, 1963. The heater which fell from the ceiling and struck the plaintiff was located in the lube room. Plaintiff testified that before the accident he did not know the heater was suspended from the ceiling by nails; that the building was fully painted before he moved in, and there was nothing to call his attention to the nails which were in the two-by-four.

The heater was installed by Avalon, the subcontractor, in this manner: first it was attached to a short piece of two-by-four by means of two flanged pipes, which extended through the two-by-four, and this board, with the heater hanging therefrom, was then nailed to two ceiling joists. There was a wealth of testimony that this was not a proper or acceptable method of installing or suspending this 265 pound heating device.

As we have previously stated, plaintiff joined all three defendants in this lawsuit, alleging negligence on the part of all. Separate answers were filed by the defendants each of whom denied liability and set forth his respective defenses.

After Skelly's motion for summary judgment had been overruled, the case proceeded to a jury trial against all three defendants. Each defendant filed a motion for directed verdict at the close of plaintiff's evidence, and each was overruled. At the conclusion of all the evidence each defendant again filed a motion for directed verdict and again their motions were denied. At this juncture, the defendants requested certain instructions, which were refused, and the three defendants then objected to the court's instructions as given. After a verdict was returned against all defendants, Skelly and Dressler each moved for judgment notwithstanding the verdict, or in the alternative for a new trial, while Avalon moved to set the verdict aside or, in the alternative, for a new trial. These final motions being overruled, all defendants appealed. From this recitation it will be observed that the defendants have not slept on their appellate rights.

Since each defendant disclaims liability on a different ground, it is essential that we discuss their appeals separately, even though this method of treatment may add to the length of this opinion.

We turn first to Skelly, whose sole contention on appeal is that the exculptaory clause in its lease with the plaintiff is a valid defense to plaintiff's claim. This clause reads as follows:

"Lessee, for himself, his heirs, personal representatives and assigns, hereby covenants and agrees to indemnify, protect and save harmless Lessor, its successors and assigns, of and from any and all claims, demands and liability for any loss, damage, injury or other casualty to property (whether it belong to either of the parties hereto or third persons) and to persons (whether third persons, Lessee or employees of Lessee), caused by, growing out of, or happening in connection with Lessee's conduct of said business or use and occupancy of said premises or buildings, improvements, equipment, or appliances located or to be located thereon, whether due to negligence of Lessee, Lessor, or otherwise."

The plaintiff does not deny that this clause is contained in his lease with Skelly, but he maintains that it is void as against public policy. Thus the issue is joined between plaintiff and Skelly: Is the exculpatory clause valid, and does it constitute a defense to plaintiff's cause of action under the facts of this case?

Exculpatory or exemption clauses are not strangers to the law of this state. In *Grain Co. v. Railway Co.*, 94 Kan. 590, 146 Pac. 1134, the railway company leased a strip of right-of-way to plaintiff for erecting a grain elevator. The lease provided that the lessee should assume all risk of loss or damage to its elevator and contents arising from the movement of lessor's locomotives and the operation of the

railroad whether or not the loss resulted from the lessor's negligence. In an action filed against the railway company for damages resulting when one of its freight cars ran into the elevator, this court ruled that the exempting clause was not invalid as contravening public policy and that it precluded plaintiff's recovery.

That ruling was followed in *Thirlwell v. Railway Co.*, 108 Kan. 700, 196 Pac. 1068, where the defendant, pursuant to a written agreement, built a spur track for plaintiff's use. The agreement contained a provision relieving the railroad company from liability for fire loss caused by defendant's locomotives. This provision was held to be valid and to bar plaintiff's right of recovery.

In a later case, *Riddle Quarries, Inc. v. Thompson*, 177 Kan. 307, 279 P. 2d 266, this court considered a temporary license granted plaintiff by the defendant, acting as trustee of the Missouri Pacific Railroad Company, to store limestone on a portion of the railroad right-of-way. The licensee covenanted to indemnify the licensor from all damage caused licensee, whether or not due to licensor's negligence, and to assume all risk of loss by fire however caused, whether by licensor's negligence or otherwise. In upholding the validity of the provisions protecting the railroad company, the court said:

"Such provisions in a license such as is here considered, are valid. As between individuals in which the public is in no way concerned, railroads may make such contracts for storage on right of way, for the erection of buildings such as elevators, warehouses, lumber yards, and construction of spur tracks and buildings used in connection therewith. . . ." (p. 312.)

The plaintiff argues however that the exculpatory clause in the Skelly lease is void under the authority of *Hunter v. American Rentals*, 189 Kan. 615, 371 P. 2d 131. We believe plaintiff misapprehends the reach of the Hunter decision. In that case Hunter leased a car trailer from American Rentals under a contract in which he absolved the rental company of responsibility and indemnified it against liability in case of accident and, further, waived all claims against American Rentals, including those resulting from either latent or apparent defects.

An agent of the rental company attached the trailer to the bumper of Hunter's car by means of a ball hitch and attached a chain from the trailer to the car but failed to provide an adequate safety hitch as required by statute. On the way to Oklahoma the hitch broke and the trailer began to sway from side to side overturning the car and injuring Hunter. Hunter sued to recover for his injuries and

American Rentals pleaded the rental agreement in defense. This court held, however, that the exculpatory provision of the contract "contravened the statute and the public policy of this state" and that the contract was unenforceable.

Although certain language in Hunter, taken out of context, might at first blush appear to support the plaintiff's position, we think it clear that the decision itself is bottomed on the proposition that one who is charged with a public duty may not, by contract, escape liability for his negligent performance of that duty. That this is a correct interpretation of our decision in Hunter is forcefully shown by the following language:

"Under the statute the defendant, being engaged in the business of renting trailers to the general public, including trailer hitches and other attendant equipment necessary to connect the rented trailers to the automobiles, owed a duty, not only to the plaintiff but also to the general public, to see that the trailer was properly installed and the trailer properly attached thereto in order that the same might be safely driven on the highway for the purpose and use for which it was intended; and defendant, by contract, could not relieve itself from its negligent acts of failing to make those safe connections and installations. The contract on the part of the defendant to relieve itself from such negligent liability is against the public policy of this state and void. (Nashua &c. Paper Co. v. Noyes Co., 93 N. H. 348, 41 A. 2d 920.)

"It is apparent that the mentioned statute was passed for the protection of the public; that the business in which the defendant is engaged, i. e., that of renting trailers to the public, is one where the interest and safety of the public must be kept in view; and, where one violates a duty owed to the public, he may not come into a court of law and ask to have his illegal contract, exempting him from liability to comply with such duty, carried out. . . .

". . . To allow defendant to escape liability by reason of its alleged contract would be defeating the purpose and intention of the legislature as provided in the mentioned statute.

"In the instant case the public was concerned with the security of its citizens as to use of the trailer on the highway. The public had a right to expect and demand that defendant, being engaged in a public service, would comply with the statute and see that the trailer hitch was of sufficient strength and the trailer properly attached so as to be safe for its use. (Otis Co. v. Maryland Co., 95 Colo. 99, 33 P. 2d 974.)" (pp. 618, 619.)

The rule pronounced in Hunter recognizes a well defined exception to the general principle that exculpatory agreements voluntarily entered into by parties standing on an equal footing are enforceable as between the contracting parties themselves. (See 17 Am. Jur. 2d, Contracts, §188, pp. 556, 557.) This exception finds expression in Restatement, Contracts, ch. 18, §575, pp. 1080, 1081:

"(1) A bargain for exemption from liability for the consequences of a

wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if

. . . . . . . . . . . .

"(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

No contention has been advanced in this case that the exonerating clause in the Skelly lease contravenes any Kansas statute, nor has our attention been called to any such enactment. In the absence of legislative expression on the subject we discern no public policy which is violated by the clause in question.

The prevailing rule so far as leases are concerned is stated in 6 Williston on Contracts, (Rev. ed.) §1751C, pp. 4968, 4969:

"Though the relationship of landlord and tenant is such that its incidents have been regulated by statute to some extent, it is clear that apart from statute a landlord may at common law exempt himself from negligence. . . ."

This remains the rule generally throughout this country. In *Eastern Ave. Corp. v. Hughes,* 228 Md. 477, 180 A. 2d 486, the Maryland Court of Appeals, in upholding a clause exempting a landlord from liability to a tenant for injuries incurred on premises pertaining to the apartment house, stated:

". . . Almost all of the courts that have passed on the question have held exculpatory clauses valid. . . . The only state in which an exculpatory clause has been held invalid as against public policy appears to be New Hampshire. . . ." (p. 480.)

A great many authorities support the proposition that an exculpatory clause similar to the one here under consideration is not, as a rule, invalid as contravening public policy when it is included in a lease between private parties. A few of the decisions will suffice to illustrate the point.

A case quite like the one at bar is *Govero v. Standard Oil Co.,* 192 F. 2d 962. In that case Govero had leased a filling station from Standard Oil under a lease containing a clause releasing Standard from any damages sustained by Govero from his use or operation of the premises whether such damages were due in whole or in part to his landlord's negligence. An explosion occurred in the basement of the station, allegedly due to Standard's negligence, and Govero sued for personal injuries sustained.

The federal Court of Appeals held that the exculpatory clause was valid under Missouri law, where the accident occurred, and that it precluded plaintiff's recovery. In its opinion the court said:

"We know of no public policy which would prevent a landlord and a tenant from agreeing that the tenant should assume, and agree to identify the landlord against, the risk of loss, damage and injuries occurring on the premises during the term of the lease, whether due to the negligence of the landlord or not. As the Supreme Court of the United States said in Santa Fe, Prescott & Phoenix Railway Co. v. Grant Brothers Construction Co., *supra*, page 188 of 228 U. S., page 478 of 33 S. Ct. 57 L. Ed. 787: '. . . There is no rule of public policy which denies effect to their [the contracting parties'] expressed intention, but, on the contrary, as the matter lies within the range of permissible agreement, the highest public policy is found in the enforcement of the contract which was actually made.'" (pp. 964, 965.)

In *Bogutz, Appellant v. Margolin*, 392 Pa. 151, 139 A. 2d 649, the plaintiffs, a husband and wife, had leased an apartment from the defendant. The written lease provided that lessor should not be responsible for any injury or damage that might happen to the person or goods of lessee in or about the premises. In an action to recover damages for injuries sustained by the wife when she slipped and fell in the apartment house basement, the Pennsylvania court held that under the terms of the lease the tenants had waived their rights to recover damages, and were precluded from maintaining the action.

*Pecararo v. Grover*, 5 La. App. 676, was a case in which a tenant sued to recover damages resulting when a large piece of plaster fell from the ceilling over her bed and struck her while she was asleep. Her lease with the defendant contained a stipulation that lessor should not be responsible for damages caused by any vice or defect in the leased premises. The court held that while such a provision could not affect the rights of others, it was not against public policy, and that the lessee was bound thereby.

See, also, *Kansas City Stock Yards Co. v. A. Reich & Sons* (Mo. 1952), 250 S. W. 2d 692 and *Foland v. St. Louis-San Francisco Railway Company*, 208 F. Supp. 295, in which *Hunter v. American Rentals*, supra, is cited and distinguished.

It must be conceded that exculpatory contracts are not favored in law and are to be strictly construed." (17 Am. Jur. 2d, Contracts, §188, pp. 556, 557.) It is likewise true that various exceptions, in addition to these already mentioned, have been carved out of the general rule that exemption clauses are valid. Annotations covering the general rule, the way it is construed and the several exceptions thereto, are found in 84 A. L. R. 654 and 175 A. L. R. 8.

We do not propose at this sitting to prepare a treatise on the exceptions to the general rule. It is sufficient here to say that under

the evidence shown by this record, which, at most, shows Skelly was negligent in making its inspection, none of the recognized exceptions would appear to be applicable.

Cases from other jurisdictions cited by plaintiff have not been overlooked. Those from New Hampshire are lonely exceptions to the general rule while others are scarcely in point. In *McCarthy v. National Association of Stockcar Auto Racing*, 90 N. J. Super. 574, 218 A. 2d 871, the violation of a statute enacted in the interest of public safety was involved. The exculpatory clause in *Murray v. The Texas Co.*, 172 S. Ct. 399, 174 S. E. 231, did not clearly cover damages resulting from the lessor's own negligence, and accordingly it was strictly construed against the lessor. In the Otis Elevator case, 95 Colo. 99, 33 P. 2d 974 which involved a public elevator, the court equated the duty owed the general public by an elevator company with that owned by a common carrier; hence it declared the exculpatory clause void as against public policy.

Counsel advances an ingenious argument that the scope of the exculpatory clause is so restricted that it is inapplicable to the facts of this case, even though the clause itself be valid. We cannot agree. While the injuries sustained by plaintiff may not have been caused by his conduct of the business, they at least grew out of or happened in connection with his use and occupancy of the premises.

As to Skelly, we conclude that the exculpatory clause in its lease with the plaintiff was not void as against public policy, but valid as to the lessee; that plaintiff's right to recover damages against Skelly is barred, under the circumstances of this case, by the plain and explicit language of the exculpatory clause; and that Skelly's motions for directed verdict should have been sustained. In so deciding we do not, of course, imply that the rights of third parties against Skelly would be controlled by the provisions of its lease with plaintiff.

The conclusion we have reached as to Skelly, makes it unnecessary for us to consider Skelly's objections to the instructions given by the trial court.

We next consider the contentions made by Avalon in this appeal. Its argument, essentially, is that the work done under its subcontract was not only completed more than a year prior to the accident but that it had been accepted both by the general contractor and by Skelly, acting on behalf of Doherty, the owner. Thus Avalon contends that even though it may have been negligent in installing the

overhead heater (which it denies) the acceptance of the heater as installed relieves it of liability.

Avalon's contention is predicated on a rule of non-liability long applied to building and construction contractors where their work has been completed and has been accepted by the owner. We find the rule succinctly expressed in 65 C. J. S. Negligence, §95, p. 1060:

"As a general rule, after the work has been completed and turned over to, and accepted by, the owner, the contractor is not liable to third persons for injuries suffered by reason of the condition of the work."

Cases from many jurisdictions are listed as being in support of the text.

Kansas has given lip support, at least, to the principle of non-liability as applied to a contractor. In *Engler v. Aldridge*, 147 Kan. 43, 75 P. 2d 290, the defendant, an independent contractor, constructed highway improvements under a contract with the state highway commission in accordance with plans and specifications furnished by the commission. After the work had been completed and accepted by the commission, plaintiff sued the contractor for damages resulting to his abutting land, alleging that the plans were so obviously defective that the defendant knew or should have known that plaintiff would be damaged. In holding that the contractor was not liable, this court, on page 47, quoted from 14 R. C. L. 107:

"The general rule is well established that an independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury results from the contractor's failure to properly carry out his contract."

The court observed in this connection that plaintiff's petition did not charge the defendant with having performed the work in a negligent manner.

The rationale of the rule of non-liability after a contractor's work has been completed and accepted by the owner, is most often expressed in terms of lack of privity, which is to say that since no privity of contract exists between a contractor and third persons, the only duty owed by the contractor in the proper performance of his contract is to the contractee.

In applying the rule of non-liability pertaining to building and construction contractors courts have not distinguished between prime contractors and subcontractors, but have applied the rule in case of the latter as well as the former. (See annotation: 13 A. L. R.

2d 201, 213.) The converse should be true also; where under the circumstances a contractor would be liable, so also should be a subcontractor.

The harshness of the doctrine of non-liability has often been tempered by the formulation of divers limitations and exceptions, the most prevalent being that which would impose liability on a negligent contractor (or subcontractor) where the conditions produced by the construction, or the articles fashioned or installed in connection with the construction work, are inherently or imminently dangerous and where the contractor (or subcontractor as the case might be) had actual or constructive notice of the dangerous situation. (*Roush v. Johnson,* 139 W. Va. 607, 80 S. E. 2d 857; *Reynolds v. Manley,* 223 Ark. 314, 265 S. W. 2d 714; *Hand v. Harrison,* 99 Ga. App. 429, 108 S. E. 2d 814; *Del Gaudio v. Ingerson,* 142 Conn. 564, 115 A. 2d 665; Annotation: Contractor—Liability To Third Persons, 58 A. L. R. 2d 881, *et seq.;* 27 Am. Jur., Independent Contractors, §56, p. 536.) The rationale of this exception was expressly recognized by this court in *Robinson v. Nightingale,* 188 Kan. 377, 383, 362 P. 2d 432.

The foregoing exception encompasses not only things which are inherently dangerous in kind, but also things not imminently dangerous *per se* but which are rendered imminently hazardous through defect. (13 Am. Jur. 2d, Building, Etc. Contracts, §139, p. 131, and cases cited therein.) It will be noted that the courts which now apply this exception recognize, at least by implication, the general doctrine of non-liability.

Of recent date, courts in an increasing number of jurisdictions have discarded the old and somewhat discredited rule of non-liability, as it concerns negligent building and construction contractors, and have evolved what may be termed the modern view, which, simply stated, imposes liability upon a contractor for injuries to a third person occurring after the completion of his work and its acceptance by the contractee, where the work is reasonably certain to endanger third persons if the work has been negligently performed. (See annotations: Contractor—Liability To Third Person, 13 A. L. R. 2d 201; 58 A. L. R. 2d 891; and cases cited therein.)

The authorities supporting the modern doctrine, in effect, apply to building and construction contractors what has become known as the MacPherson rule, under which a negligent manufacturer of a defective article is held to be liable for injuries occasioned thereby

to a third party, where he reasonably could have foreseen that injury might result to persons other than the purchaser. This legal concept is discussed in *Dow v. Holly Manufacturing Company,* 49 C. 2d 720, 321 P. 2d 736, where the court said:

"It should first be observed that the owner for whom the house was built by defendant general contractor had accepted the house and it had been transferred by him, with title finally vesting in the Dows. At one time this was an obstacle to recovery from the general contractor on the theory that there was no privity of contract between the contractor and the person injured, but it is no longer the law, as obviously, the problem presented is the same as where a manufacturer negligently manufactures an article which subsequently injures someone other than the purchaser of the article. See famous case of *MacPherson v. Buick Motor Co.,* 217 N. Y. 382 [111 N. E. 1050, Ann. Cas. 1916C 440, L. R. A. 1916F, 969] . . ." (p. 724.)

In similar vein, the Delaware court in *Hunter v. Quality Homes, Inc.,* 45 Del. 100, 106, 68 A. 2d 620, commented:

". . . Indeed, it is hard to perceive why the duty imposed by law for defective manufacture should differ from that for defective installation, when a product is thereby rendered imminently dangerous. It is the probability of injury which gives rise to the duty and, in the case of an oil burner, careless workmanship in either respect may create the danger. . . ."

The New Hampshire Supreme Court expressed the same view in *Russell v. Whitcomb,* 100 N. H. 171, 121 A. 2d 781, where it said, on page 173:

"We adopt the view outlined by Prosser that independent building and construction contractors should be held to a general standard of reasonable care for the protection of third parties who may be foreseeably endangered by the contractor's negligence even after acceptance of the work. . . ."

Failure of the property owner to discover the dangerous condition, even though his failure may have been due to negligence on his part, is still said to be insufficient to relieve the contractor from liability to a third party. (*Russell v. Whitcomb,* supra; Prosser on Torts, 3d Ed., ch. 19, §99, p. 696.)

We believe the modern view presents a rational, practical and equitable rule which should be followed in this jurisdiction. Nor do we think its adoption in this case necessarily conflicts with our holding in *Engler v. Aldridge,* supra, for it will be remembered that the court in that case pointed out that the plaintiff did not allege the defendant contractor had performed the work in a negligent manner. To the extent, however, that the Engler decision may be said to conflict with our present holding, the same is disapproved.

In a very recent case, *Russell v. Community Hospital Association, Inc.*, 199 Kan. 251, 428 P. 2d 783, we had occasion to speak concerning the question of a contractor's liability. This was an action to recover damages for injuries occurring when plaintiff fell on steps leading to the hospital parking lot, it being alleged that the hospital association and the religious order which operated it were negligent in the construction, operation and maintenance of the stairway.

The defendant association filed a third party petition, alleging that if there was negligence, as plaintiff claimed, it was properly the negligence of the architects who designed the hospital and the contractor who constructed it. A motion was filed to dismiss the third party petition and this motion was sustained. This court on appeal reversed the trial court and held that both the architects and the contractor were proper third party defendants, on the theory their negligence might prove to be the primary or active cause of plaintiff's injuries, entitling the defendants to indemnity. In the course of the opinion we said:

"If there is fault in the construction and particular design of the hospital structure, the architect or the contractor is primarily at fault, assuming the appellants [defendants] relied upon the skill of these people in the development of the premises. Furthermore, if the appellants are responsible to the plaintiff for allowing these faults to exist in the few months following completion of the project, the appellants' fault would be passive or subordinate to the fault of the architect or contractor." (p. 255.)

Measured by the modern rule of liability, as we have discussed above, we have no difficulty in concluding that the evidence was amply sufficient both to submit the question of Avalon's liability to a jury and to support the jury's verdict against Avalon. While Mr. Sebring, president of Avalon, testified his company had hung three other heaters in the same manner that Skelly's was hung, he further said [the installation] always spanned three ceiling joists (while the instant heater spanned but two). In addition, there was ample competent evidence tending to show the heater was installed in such a defective manner as to create a risk. The suspicion might also occur, even to a layman possessing the sketchiest acquaintance with the law of gravity, that to suspend a 265 pound heater to a couple of ceiling joists with nails alone might well entail some hazard.

We hold that the trial court did not err in overruling either Avalon's motions for directed verdict or its motion to set aside the verdict or in the alternative to grant a new trial. We have also ex-

amined the trial court's instructions bearing on Avalon's liability and conclude that Avalon was in nowise prejudiced thereby.

The remaining question in this appeal relates to the liability of the general contractor, Dressler. His position appears to be that he is not liable for the torts of his subcontractor and he cites the rule that one who employs another to do a piece of work is not liable for the other's negligence in doing the work, unless the relationship of master and servant exists between them. (*Railroad Co. v. Madden*, 77 Kan. 80, 93 Pac. 586.) This rule, he suggests, protects a principal contractor where the cause of the injury complained of was the negligent or wrongful act of a subcontractor, citing an annotation in 18 A. L. R. 801, 810. The statement in A. L. R. to which Dressler alludes was specifically tied to the general rule of non-liability relating to contractors, which was in vogue at that time. Since then, as we have seen, exceptions have been engrafted on that rule, and the modern rule, qualifying the old, has been formulated.

The several authorities cited by Dressler involve injuries occasioned by the negligence of an independent contractor *during the performance of the work called for by his contract*, and hence are not decisive of the question presented here. The negligence asserted against Dressler was in turning over the station in such a defective condition that he knew or should have known of the dangerous situation which was likely to result in injury to someone. As plaintiff points out, he does not seek to hold Dressler liable for Avalon's negligence but for his own negligence in failing properly to inspect the work and discover the negligent manner in which the heater was installed.

Such was the theory on which the plaintiff presented his case against Dressler, and such, in effect, was the theory on which the case was given to the jury. In its instructions, the trial court advised the jury, in substance, that if they found Avalon's work so negligently defective as to result in an imminently dangerous condition, which probably would injure a person likely to come in contact therewith, and if they found Dressler turned the work over when he knew or should have known, of such defective and dangerous situation, and if they further found that plaintiff's injuries proximately resulted from the defective work, then they should find in plaintiff's favor as against Dressler.

We believe the facts shown here, as they relate to Dressler, bring the case clearly within the ambit of the decision in *Pastorelli v.*

*Associated Engineers, Inc.,* 176 F. Supp. 159, a case whose facts are strikingly similar to those in the instant action. There, the plaintiff was injured when a heating duct, suspended by nails from the ceiling of the Narragansett Racing Association, fell and struck him. Suit was brought against three defendants: Associated Engineers who prepared the plans and agreed to "supervise" the contractor's work, the general contractor for the job, designated as "P & M", and the subcontractor Randall, who defectively installed the heating duct.

Judgment was entered in favor of the plaintiff against all three defendants: architect and inspector, the general contractor and the subcontractor. In imposing liability against "P & M", the general contractor, the court had this to say:

"I am also satisfied that P. & M. did not exercise ordinary care in superintending the installation of said duct or in inspecting the manner and means of its installation. Had such care been exercised, the defective and inadequate means of attachment would and should have been discovered and corrected. P. & M.'s authority to have ordered such corrections is undisputed." (p. 165.)

In our opinion there was ample evidence, as shown by the record, not only to justify submitting the case to the jury but also to justify the jury in finding, by its verdict, that Dressler had not exercised reasonable care in superintending and inspecting the installation of the heater. One of Topeka's experienced heating contractors testified that it is normal in the construction business for the general contractor to inspect the work of a subcontractor after it is completed and to notify the subcontractor if there is something wrong which should be corrected; that a subcontractor has two people to satisfy, the general contractor and the owner; that there was nothing hidden about the way this heater was put up and that anyone inspecting the same could see that it was nailed.

Dressler, himself, testified he was at the building site about once every day and supervised the construction; that at the final inspection he and Skelly's inspector were together and he undoubtedly looked at the heater, but not close enough to see that it was held to the ceiling by nails; that if he saw something on a job which was not right or didn't suit him, he would probably call it to the owner's attention or would go to the owner; that he felt no responsibility to make reasonably certain the subcontract work met the requirements but left that to the inspector; that where there are no plans covering certain installations (as was the case with

this heater) he would consult the inspector if it came to his attention but he did not do it here.

The law, as expounded in the Pastorelli case, does not absolve a general contractor from the duty of exercising reasonable care in supervising and inspecting the work called for in his contract; he has some responsibility to see that the entire work he contracted to perform is properly done. He may not evade all responsibility by blind reliance on a subcontractor or on the owner's inspector. The real question is whether, in turning work to the owner, the contractor knew or in the exercise of reasonable care should have known of a dangerous condition created by the work. In the present case we believe that the evidence, with the inferences which reasonably might be drawn therefrom, was sufficient to support the finding against Dressler on that issue.

We hold that the trial court did not err in overruling either the motions for directed verdict filed by Dressler; or his motion for judgment notwithstanding the verdict, or in the alternative for a new trial, nor did it err in its instructions to the jury concerning Dressler's liability.

For reasons set out in the course of this opinion, we reverse the judgment against the Skelly Oil Company and direct the trial court to enter judgment in its favor. We affirm the judgments against Dennis Dressler, d/b/a Dressler and Company and against Avalon Heating and Air Conditioning, Inc.