**KOCH INDUSTRIES, INC., Appellant,**

**v.**

**Irwin Lyon VOSKO, Appellee,**
**and**
**Arthur Young & Company, a partnership,**
**et al., Appellee.**

**Nos. 73-1159 to 73-1161.**

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 13, 1973.

Decided April 8, 1974.

Thomas W. Hill, Jr., New York City (Donald Stuart Bab, Robert E. DeRight, Jr., New York City, Joseph W. Kennedy, Robert I. Guenthner, and Oliver A. Witterman, Wichita, Kan., with him on the brief), for appellant.

Malcolm Miller, Wichita, Kan. (George B. Powers, and Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., with him on the brief), for appellee, Irwin Lyon Vosko.

David Hartfield, Jr., New York City (Paul R. Kitch and John E. Matson, Wichita, Kan., Fredric S. Newman and Carl D. Liggio, New York City, with him on the brief), for appellee, Arthur Young & Co.

Before SETH, ALDISERT * and DOYLE, Circuit Judges.

SETH, Circuit Judge.

This action was commenced by Koch Industries, Inc., a Kansas corporation, against Irwin Lyon Vosko and Arthur Young & Company. The suit sought damages for fraud, for negligence, for violation of the Securities Act, and punitive damages.

Defendant Vosko denied the allegations in the complaint and filed a counterclaim against Koch Industries for breach of contract and for fraud and deceit. The defendants Vosko and Arthur Young both filed third party claims against Atlas Petroleum, Ltd.

The case was tried to the United States District Court for the District of Kansas without a jury. The trial took about ten weeks, and the transcript consists of some 6,400 pages and 411 exhibits.

The trial court made 186 Findings of Fact. It entered judgment on the counterclaim of defendant Vosko against Koch Industries in the gross amount of $4,822,601.00, as compensatory damages, less a setoff of $2,230,651.00. The court also awarded punitive damages to defendant Vosko against Koch Industries in the amount of $250,000.00, and indemnity for costs and expenses in the amount of $124,600.00. Also the court gave judgment in indemnity to Arthur Young in the amount of about four hundred thousand dollars. The plaintiff Koch appealed (No. 73–1159), and both defendants filed cross-appeals (Vosko, No. 73–1161; Arthur Young, No. 73–1160).

The litigation arose out of the sale by Irwin Vosko of all the capital stock of Atlas Petroleum, Ltd., a Bahamian company, to Koch Industries, Inc., the subsequent employment of Vosko by Atlas, and his retained interests therein and obligations in regard to certain accounts due the company.

Atlas Petroleum was engaged in the international oil trading business. It was also a holding company with subsidiaries having heating oil sales and gasoline sales businesses in Canada and Europe. There were also other subsidiary corporations, with activities unrelated to the oil business or indirectly concerned with it.

Vosko was well into negotiations to sell all the stock in Atlas Petroleum to Occidental Petroleum when representatives of Koch Industries approached him seeking to buy the stock. The negotiations with Occidental did not result in a final agreement, and negotiations between Koch and Vosko commenced. After intensive consideration, the parties entered into a preliminary agreement followed by a stock purchase agreement. This agreement was later modified in important particulars.

Arthur Young was in partnership with accountants in the Bahamas engaged in preparing an audit statement

* Of the Third Circuit, sitting by designation.

for Atlas Petroleum to be used in the sale to Occidental. The statement, addressed to Atlas shareholders, was completed, but was delivered instead to Koch Industries. Much of the dispute centers around this financial statement and whether certain accounts shown thereon to be due Atlas Petroleum were properly stated and were valid.

As indicated above, the trial court found for Vosko. The findings, a few of which are hereinafter set out, were in effect that Koch Industries was the one and the only one guilty of fraud and the only one which had breached the contract. The Memorandum Opinion of the trial court clearly sets out the facts and the sequence of events in detail, thus we will not repeat them here.

The appellant's position in this appeal is somewhat unusual in that it asks this court to reverse the trial court and direct entry of a judgment for the appellant, but it does not challenge the findings of fact made by the trial court. In its brief the appellant says of itself: "KI does not generally dispute the trial court's findings of fact, only the inferences and conclusions which are in no way supported by necessary intermediate findings of fact." The appellant further urges, as to this same point, that the trial court ignored its own findings which supported KI's fraud claim, and drew erroneous and unsupported inferences from its findings. The further point appellant urges is that the findings of the trial court "and the record" establish the liability of Vosko and Arthur Young for common law fraud and under the Securities Act.

Thus the appellant would have us use the trial court's findings, refer to the record, and reach a conclusion opposite to that reached by the trial court; then to direct entry of judgment for the full amount claimed by KI as damages, order the judgment to include the full amount claimed by KI as punitive damages, and "grant such other and further relief as to the court seems appropriate."

As indicated above, the trial court made findings of fact which cover the details of the many transactions over a period of several years. The trial lasted some ten weeks, and many witnesses were heard, and exhibits received. These findings cover about one hundred pages in the Appendix, and reference is made to them for a more detailed description of the facts. It is sufficient for these purposes to quote several of the findings of fact which summarize the details. These are findings relating to the basic fraud issue. The trial court found in findings numbers 146, 147, 148, and 166 as follows:

"146. From the documentary evidence and testimony concerning events which transpired within the Koch organization from August, 1969 through February, 1970—and in light of what transpired thereafter, the Court is of the opinion, and so finds, that beginning in August, 1969, Koch wilfully and intentionally embarked upon a tax scheme and plan to operate Atlas Pete for its own purposes, with a total and contemptuous disregard for the rights of Vosko under the Purchase Contract and Agreement of June 13, 1969, including his rights in the fixed asset companies, and to deprive him of a reasonable good faith expectation of continued employment and enjoyment of his stock rights, so long as he conducted himself in accordance with fair and honest instructions of his employer, Koch.

"147. In arriving at the foregoing findings of bad faith conduct on the part of Koch, the Court has considered testimony and documents concerning Koch's plan to obtain a tax write-off of its total investment in Atlas Pete, to write down the assets of Atlas Pete and its subsidiaries, to write off accounts receivable and other alleged losses in as great an amount as possible for the year 1969, and finally, to 'finish-off', or liquidate Atlas Pete in 1970, all necessary steps in the plan to substantiate Koch's claimed tax losses and to avoid its obligations to Vosko.

"148. In particular, the Court finds, with respect to the documents [TE 323 and TE 406] that:

"a) On October 1, 1969, Koch had no intention whatsoever of sharing any portion of Atlas Pete's income with Vosko;

"b) On or before that date, Koch had determined that it would assure, to every extent possible that Atlas Pete would have *no* income during 1969–1970;

"c) Koch induced Vosko to release his option and veto rights in the fixed asset companies, in bad faith, and with the intent to deal with these companies in its own interests, and for its own purposes, and not, as represented and promised, for the mutual benefit of Koch and Vosko;

"d) On October 1, 1969, Koch had no intention of honoring its promise not to sell or dispose of the fixed assets if such sale would materially affect the value of Atlas Pete as an operating entity; and

"e) On October 1, 1969, when Koch reaffirmed and re-adopted all provisions of the Stock Purchase Agreement, not otherwise amended, it did so in bad faith, intentionally concealing its real intent to dispense with Vosko's services at the first opportunity, in utter disregard of his employment rights and expectations under his employment agreement with Koch."

\*    \*    \*    \*    \*    \*

"166. The Court concludes and finds, that any representations or warranties made by Vosko concerning the 1968 Financial Statement, or matters contained in the Memorandum of Intent of May 22nd, or matters contained in the Purchase Agreement on June 13, 1969, were in good faith, and without intent to defraud, cheat, or mislead Koch as those terms are understood in the Securities Act of 1933, 1934, and Rule 10b–5, or in the common law of fraud and deceit, all as alleged by plaintiff in the Pre-Trial Order, Dkt. No. 152, pp. 11–17, 20–23;

16, 20. [Counts I, II, III, and IV, Complaint]."

▮ These are the findings as to the active fraud practiced by Koch Industries on Vosko. They are clear, direct, and leave no room for any inferences. They contain all the elements of common law fraud. These elements are contained in the findings quoted above. See Young v. Taylor, 466 F.2d 1329 (10th Cir.), and Venture Investment Co., Inc. v. Schaefer, 478 F.2d 156 (10th Cir.). These findings cannot be avoided, ignored, or explained away by the appellant. There is no assertion that they are not supported by the evidence, and indeed they are supported. They are based on the combination of testimony of the witnesses heard by the trial court, together with the exhibits. There were no findings that Vosko was guilty of fraud in any respect, nor in misleading appellant.

With this state of the record, it is difficult to find any validity whatever in appellant's point in its argument and brief that: "The findings of the trial court and the record establish the liability of both AY and Vosko to KI under the Federal Securities laws and the common law of fraud and deceit, both individually and as conspirators," or that the trial court erred "in ignoring its own findings which suppport KI's fraud claims."

Little more need be said as to fraud as it was established that Koch Industries was the only wrongdoer, and without any qualifications or conditions.

The initial relationship, rights, and duties of the parties were established by a written agreement which was later modified by an arm's length negotiation and also by amendments negotiated by appellant with a fraudulent purpose.

The trial court made a series of findings of fact as to the breach of contract issue. There are detailed findings, but we quote those which summarize the transactions:

"149. In addition to the foregoing actions which breached the Purchase

Agreement, and amendments thereto, Koch proceeded to dispose of the fixed asset companies during 1970 for its own purposes, as discussed *infra*.

"During the entire trial, the Court listened carefully, but was unable to discover any evidence whatsoever that Vosko had breached the June 13, 1969 Purchase Agreement in any way. It is true that he had warranted various items on the 1968 balance sheets, but Vosko was not accountable on these warranties until the final adjustment date—a date which never came in this instance. . . ."

"174. When Koch sold to itself the fixed asset companies having an actual value of $5,000,000 for a token payment of $16,477, it breached ¶ 4.8.-2 of the Purchase Agreement by failing to pay over to Atlas Petroleum, and into escrow, for Vosko's benefit, the true value of said assets."

The trial court also found that the "tax plan" of Koch Industries as to Atlas Petroleum, the discussions of which began in October 1969, was directed to making a shell of Atlas Petroleum which would thereby eliminate the contractual rights of Vosko which were dependent upon Atlas Pete as a going concern. The court, as to this plan, found:

"136. . . . . No one from Koch advised Vosko of Koch's tax plan for Atlas Pete, and insofar as the Court· is able to determine, Vosko was simply oblivious to Koch's real intentions with regard to his place in the Koch organization, or Koch's plan to strip all assets from Atlas Pete for its own purposes and get rid of Vosko. . . ."

Thus again the findings are clear as to breach of contract by Koch Industries, with a further finding of no breach by Vosko. The court said, as quoted above: "During the entire trial, the Court listened carefully, but was unable to discover any evidence whatsoever that Vosko had breached the June 13, 1969 Purchase Agreement in any way." These findings are equally direct on the absence of an attempt to mislead or conspiracy with regard to a violation of the Securities Act. The trial court found as to the financial statement and the Securities Act:

"166. The Court concludes and finds, that any representations or warranties made by Vosko concerning the 1968 Financial Statement, or matters contained in the Memorandum of Intent of May 22nd, or matters contained in the Purchase Agreement on June 13, 1969, were in good faith, and without intent to defraud, cheat or mislead Koch as those terms are understood in the Securities Acts of 1933, 1934, and Rule 10b–5, or in the common law of fraud and deceit, all as alleged by plaintiff in the Pre-Trial Order, Dkt. No. 152, pp. 11–17, 20–23; 16, 20. [Counts I, II, III, and IV, Complaint]."

As to the fraud issue, the Securities Act issue, and breach of contract, the appellant can find no comfort in the findings of fact, and there need be no inferences drawn from them.

Much of appellant's brief is concerned with the valuations and methods used by the trial court to fix the damages awarded to Vosko. The argument in the brief begins on this point, and the assertion is made that the trial court used improper methods and figures to determine the value of the fixed asset companies or their assets. Under the agreements Vosko was to receive, in addition to a purchase price otherwise established, proceeds from the sale of the fixed assets, good will, and deferred charges of "fixed asset companies" to the extent such price exceeded the book value thereof, and did not exceed five million dollars.

■ In awarding damages to Vosko, it was necessary for the trial court to value the fixed assets and good will of these companies because under Koch's direction they were sold for a nominal consideration ($16,477.00) to Koch Industries as part of the fraud practiced on Vosko and as part of the diversion of

earnings to them from Atlas Pete to make it worthless. See Finding of Fact No. 146 quoted above. The court made a finding of fact as to the values to be used in computing the damages suffered by Vosko in connection with the handling of the fixed asset companies. It found the value of the fixed assets and good will of such companies to be $5,000,000.00 in 1970; from this it deducted the book value of $2,423,568.00 and found Vosko's damages as to this item to be $2,576,432.00.

The appellant complains that the court valued the "companies," and not the assets, and further that this was improperly done by a capitalization of earnings. The agreement provided for the valuation to include good will. The parties throughout the period had attempted to sell the companies to others as going concerns, and the trial court considered the contractual terms of "fixed assets, good will, and deferred charges" as the equivalent to going concern value. This was a permissible and reasonable reading of the agreement and conclusion from the testimony as to the acts of the parties. There is no basis for appellant's contention that the physical assets only were to be sold. Capitalization of earnings was likewise a reasonable method to establish value. The court used a figure of ten per cent, and then reduced the product by one-half. The best evidence was used, the going concern value was proper, and the correct companies were included. Koch had prepared a letter amendment signed by Vosko on October 1, 1969, which refers to the fixed asset companies as those listed in exhibit A to the basic agreement. This exhibit lists the companies used by the court in reaching its finding.

Again the trial court made a finding of fact; this was the value of the assets and good will of the companies, and the appellant does not urge that this finding was not supported by the evidence. *See* United States v. 79.95 Acres of Land, Etc., 459 F.2d 185 (10th Cir.), and Stoody Co. v. Ryer, 374 F.2d 672 (10th Cir.). The appellant urges that erroneous inferences were drawn *from the findings of fact*, but we find none. There was again no need to draw any inferences.

The appellant also urges that it was error to award damages to Vosko for termination of his employment agreement with Koch Industries. These damages amounted to $440,000.00. Under the agreements, Vosko was to be employed for a ten-year period, and be paid $100,000.00 per year. He entered on his duties and performed without any complaints until he was summarily fired, as the trial court found, and this suit against him was commenced. Vosko had been given stock rights which were dependent upon his continued employment. The trial court found that when the agreement was modified on October 1, 1969, and the employment and stock rights of Vosko in prior agreements were reaffirmed, Koch Industries had no intention of keeping its bargain, and had already decided to fire Vosko. The trial court found:

"[148] e) On October 1, 1969, when Koch reaffirmed and re-adopted all provisions of the Stock Purchase Agreement, not otherwise amended, it did so in bad faith, intentionally concealing its real intent to dispense with Vosko's services at the first opportunity, in utter disregard of his employment rights and expectations under his employment agreement with Koch."

The June 13th contract provided that Koch Industries could terminate Vosko's employment "for any cause upon thirty days written notice." The trial court found that the discharge of Vosko was part of the fraudulent scheme of Koch Industries. This is supported by the record. Thus the reaffirmance of the employment arrangement and the subsequent discharge were all done as part of the fraud on Vosko. With the discharge a step in the fraudulent course of conduct, it constituted a breach of the employment contract by Koch Industries. Under these circum-

stances, the employee is entitled to damages for such a breach, and the court so awarded what is really a lump sum. The finding of liability is in accordance with Lucas v. Whittaker Corp., 470 F.2d 326 (10th Cir.); Odell v. Humble Oil & Refining Co., 201 F.2d 123 (10th Cir.); and Rench v. Hayes Equipment Mfg. Co., 134 Kan. 865, 8 P.2d 346 (1932). The dollar figure was a reasonable finding under the proof.

■ The appellant in its pleadings and initial proof sought to establish a cause of action against Vosko and Arthur Young & Company based upon a financial statement prepared by the accountants in connection with a prospective sale by Vosko to another purchaser, Occidental Petroleum. The appellant received this statement after making an intensive investigation itself in April 1969 and subsequently into the affairs of Atlas Pete, but complains that the statement did not separately show the receivables from certain Canadian subsidiaries. These receivables were explained to the representatives of Koch on several occasions and the facts appeared in other documents all before the initial Memorandum of Intent of May 22, 1969. After May 22d Koch made further investigations and obviously knew all the facts and circumstances. Arthur Young had been assisting Koch in gathering the data to prepare the June 13th contract. On June 2, 1969, Koch proceeded and drew the purchase agreement which was executed on June 13th. Vosko warranted the financial report and monies were set aside in the initial payments to protect Koch. The proof at trial showed that the receivables in question were valid. Similar ones had been paid in past periods. The record shows, and the trial court found, that full disclosure was made to Koch, and further that Koch did not rely on the statement anyway. The findings also show that Koch proceeded with the sale, assumed control, operated the companies, encouraged Vosko in his duties with the company for a period of six or

seven months, and made no complaint whatsoever to Vosko or Arthur Young about any of the issues sought to be raised in its complaint. The first indication whatever that Koch had some objection was when Vosko was served with a copy of the complaint in this suit and a letter of dismissal at the New York Airport as he and Charles Koch landed on a return from South America where Vosko had been familiarizing this officer with the important company activities and contacts there. This was February 20, 1970. The trial court found:

"143. The Court finds that the allegations set out in the complaint in this action were the first notice to Vosko or to Arthur Young of any complaint that Koch had concerning the 1968 Financial Report or its purchase of the Atlas Pete stock.

"144. Upon service of process, and notice of termination, Koch changed the locks on the doors of the Nassau office, refused to pay Vosko any salary or allowances clearly due to him under the provisions of the June 13th Purchase Agreement, and refused to pay expenses he incurred in connection with his services as an employee of Koch. [See TE 402].

"145. Koch also immediately filed suit in Nassau to foreclose on Vosko's home in an attempt to collect the account receivable due from the Samantha Trust. Inasmuch as this debt was not due until the 'final adjustment date', such action by Koch constituted a flagrant breach of the Purchase Agreement, and an intentional, wilful act in total and contemptuous disregard of Vosko's rights under that Agreement. Vosko was able to raise the money to pay the Samantha account and avoid foreclosure on his home."

During this interval before suit was filed, Koch had been negotiating further with Vosko, of course without indicating any problem; additional modifications of the basic agreement were signed

which reaffirmed the transaction. The trial court found:

"104. By June 2d, 1969, Koch was aware of all of the hazards connected with operating Vosko's business enterprises, the limitations of the AY report and other statements of Vosko's companies. Knowing this, Koch still wanted to purchase Atlas Pete as an entree into the international oil business and determined to protect itself from anticipated losses in the final purchase contract. [As suggested by AY (McCloud's letter) *infra*]."

The silence by Koch plus the reaffirmance of the initial arrangement is within the rule stated in Security Underground Storage, Inc. v. Anderson, 347 F.2d 964 (10th Cir.):

"If a party to a contract remains silent as to a claimed invalidity of a contract and continues to treat property as his own which was the subject of the contract, he will be deemed to have waived his objection and will be bound by the instrument. Morse v. Kogle, 162 Kan. 558, 178 P.2d 275; Lichter v. Goss, 7 Cir., 232 F.2d 715; Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778; American Mannex Corp. v. Huffstutler, 5 Cir., 329 F.2d 449."

In J. C. Nichols Co. v. Meredith, 192 Kan. 648, 391 P.2d 136 (1964), the court said:

". . . It was further stated that ordinarily an express ratification is not necessary in order to defeat the remedy of rescission. Acts or conduct, inconsistent with an intention to avoid it, or in recognition of the contract, have the effect of an election to affirm it."

■ The trial court awarded punitive damages to Vosko. This is challenged by the statement of the appellant that it is instead entitled to compensatory damages and punitive damages, not Vosko. The conclusions and findings of fact however support the award of punitive damages to Vosko.

■ The appellee Vosko has taken a cross-appeal from the portion of the judgment which allowed the appellant an offset against the damages found due appellee, an amount representing the guarantees Vosko made in the Purchase Agreement. These were for the most part the Canadian receivables due Atlas Pete, and were also items which were the basis of the criticism of the Arthur Young financial statement. The guarantees undertaken by Vosko were in part the suggestion of Arthur Young & Company to Koch Industries in its drafting of the June 13th agreement. This cooperation was not disclosed to Vosko by Arthur Young, but it resulted in a draft which protected Koch in all respects as to the matters Koch here complains of, and demonstrates the knowledge of Koch as to all relevant facts.

The trial court in its Conclusions said in part:

"4. . . . .

"c) In any event, the Court has found that Koch was fully aware, or should have been fully aware of the nature of the Canadian receivables by May 30th, and certainly by June 13, 1969, and therefore it may not complain about any omissions in the 1968 financial report relating to these Canadian receivables.

"d) With full knowledge of the questionable status of the Canadian accounts, Koch elected to proceed with the purchase of Atlas Pete, and prepared the final purchase contract in such manner that it would be fully protected with respect to them by the warranties of Vosko, all as suggested to Koch by AY.

"5. . . . .

"The Court concludes that in view of the numerous breaches of contract attributable to Koch, many of which prevented Vosko from at-

tempting to meet his warranty obligations, and in view of the fact that Koch has never, to this date, delivered to Vosko the certified audit and certificate required by ¶ 6 of the Purchase Agreement, or permitted him to object to same in writing, the Court is of the opinion, and so concludes that Vosko is chargeable with only five of the provable disputed accounts.

"In this connection, Koch will be allowed the following sum [*sic*] which are ascertainable to the Court's satisfaction as an offset to the judgment to be entered herein in favor of Vosko:

| | |
|---|---:|
| "Balance due, Hess receivable | $ 177,949.00 |
| Balance due, Italian subsidy claim | 234,498.00 |
| Balance due, Canadian receivables, 12/31/68 | 1,224,101.00 |
| Balance due, Atlas, S. A. receivable | 150,414.00 |
| Advances made to Canadian companies, 1969 | 443,689.00 |
| Total | $2,230,651.00 |

"The Court further concludes that by reason of Koch's breach of contract, Vosko is relieved of all further obligation to perform under the contract of June 13, 1969, as amended, including any obligation he may have had to deliver title to Velva Terminal, South Shields, England."

The court then found as to the damages suffered by Vosko:

"1. From the foregoing findings of fact, the Court concludes that Vosko sustained actual damages by reason of Koch's various breaches of contract, and wrongful, intentional conduct. In particular, the Court concludes that Vosko has sustained the following damages subject to off-sets noted *supra* by reason of Koch's wrongful conduct, and is entitled to recover the same in the following amounts:

a) Funds deposited in escrow at closing, June 13, 1969     $ 373,000.00
Interest on above at 8%, 6/13/69 to 11/1/72     100,000.00

b) Salary and living expenses, per ¶ 8.4.1.1 Purchase Agreement     83,333.00

c) Payment due for decrease of payable to British Petroleum, as of 12/31/69     49,836.00

d) Damages arising from Koch's deceitful conduct on October 1, 1969, its failure to perform employment agreement in good faith; discharge of Vosko without notice, without cause, and with the intent to deprive him of stock rights:
Salary and allowance at $110,000 per annum, 4 years     440,000.00

e) Reasonable value of stock rights over 4-year period; Stock valued by Koch at 17½ times earnings—each 154 shares valued at $200,000.00:

| | | |
|---|---:|---:|
| 308 shares – 12/31/70 | $400,000 | |
| 154 shares – 12/31/71 | 200,000 | |
| 154 shares – 12/31/72 | 200,000 | |
| 154 shares – 12/31/73 | 200,000 | |
| 154 shares – 12/31/74 | 200,000 | |
| | | 1,200,000.00 |

f) Damages arising from Breach of ¶ 4.8.2, of Purchase Agreement, as amended by Letter Agreement, October 1, 1969; Sale of fixed asset companies:

| | | |
|---|---:|---:|
| Actual value, 1970 | $5,000,000 | |
| Less Book value, per Purchase Agreement | 2,423,568 | |
| | | 2,576,432.00 |
| | | 4,822,601.00 ` |
| Less Off-set: | | 2,230,651.00 |
| Vosko's Net Actual Damage | | $2,591,950.00" |

———◆———

Thus the court reduced the amount of damages due Vosko by the items quoted above—the warranties. The appellant asserts that under the findings of fact, no such setoff should have been made. What were these findings? The trial court found that the warranties were to be effective at a time fixed in the June 13th agreement which was described as the "final adjustment date." This was a time or event when Koch was to have submitted a certified audit to Vosko, then to allow time for his objections to the audit, and then proceed to arbitration if no agreement could be reached. The timing was pretty much within Koch's control. Vosko had over a year and a half under the arrangement to see that the receivables were paid to Atlas Pete and to otherwise see that the warranted events would take place in the regular course of business. The trial court found, in Finding No. 149, quoted in part above, that Vosko did not breach the June 13th agreement in any way. Also: "It is true that he had warranted various items on the 1968 balance sheets, but Vosko was not accountable on these warranties until the final adjustment date—a date which never came in this instance." The court also made findings as to Koch's interference with relations in Argentina in 1970 which resulted in a failure by Atlas to collect claims against YPF—a subsequent proposal was refused by Koch. The actions of Koch also prevented the orderly collection of the Canadian receivables, and of course the firing of Vosko prevented any further opportunity to collect the receivables. The business of Atlas Pete was dispersed among the subsidiaries. The trial court found that the receivables due from the Canadian companies which appear in the Atlas Pete statements were representative of actual transactions, were owing to Atlas, were not fictitious, and in business years before had been paid to Atlas. The findings show that Koch prevented Vosko from performing on the warranties; there were specific findings that Vosko committed no breach of contract, but that many acts of Koch Industries constituted breach of contract as to Vosko in addition to the fraud. Under these findings there was no basis for applying the setoff for the nonperformance of the warranties. The nonperformance was due, under the specific findings, to the acts of Koch Industries and not Vosko. Thus the warranties must be considered to have been fulfilled and no setoff applied. We have considered the receivables, the subsidy claim, and the advances to the Canadian companies to be in the same category for this purpose. Thus the judgment of the trial court is reversed as to the setoff applied against the damages due Vosko in the amount of $2,230,651.00, and the case is remanded with directions to increase the judgment awarded appellee Vosko as to this element of the judgment to the full amount which the trial court found Vosko to be damaged.

We have examined the contention of Vosko that the trial court erred in not awarding Vosko all of the amount to which he was entitled for the stock rights. Here again, as the court did in regard to compensation for services, a lump sum was used as compensation for this element. This is in accordance with the findings of fact by the trial court. The contention of Vosko in this respect we find to be without merit.

■ To continue with the Koch-Vosko aspect of this appeal, we must consider the award by the trial court of indemnification to Vosko for losses and expenses he incurred by reason of this suit. These expenses were assessed against Koch Industries by the trial court because Koch had reduced "the assets of Atlas Pete to *zero* by December 1970." The provision for indemnification of corporate officers appears in Article 84 of the Articles of Association of Atlas Pete. The provision covers acts done in the execution of the officer's duties. As to Vosko this provision is not applicable because the litigation arose by reason of his acts as an individual and not in the execution of his official duties. The origin of the expenses is simply not within the charter provisions. If the provision does not come within the charter of the Bahamian corporation, there would seem to be no basis for the award under any other law to a person in Vosko's position. The judgment must be reversed as to this item, and upon remand it is directed that the indemnification in the amount of $124,600.00 allowed to appellee Vosko be removed from the judgment as thereafter entered.

■ We have not yet considered some of the points raised by the appellant as to the appellee, Arthur Young & Company. The appellant urges that both Vosko and Arthur Young are liable under the Securities Act and in common law fraud; that the appellees conspired to defraud Koch Industries; and that Arthur Young is liable under common law rules as to the liability of accountants under the English Law for negligence. We have outlined above the Koch-Vosko relationship and the findings and conclusions relative to the fraud issue. The court also found there was no conspiracy by Vosko and Arthur Young to defraud or to violate the Securities Act. The standard under the Securities Act is set out in Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir.). *See also* Financial Industrial Fund, Inc. v. McDonnell Douglas Corp., 474 F.2d 514 (10th Cir.). The findings referred to also stated that the financial report in issue was not fraudulently prepared or issued. The main issue pertaining to the financial report was again the inclusion, without separation, of the receivables from the Canadian companies. The timing of the report and its preparation for the ongoing Occidental sale were factors. Again, as described above, Koch knew the pertinent facts and no reliance on the statement was shown. The trial court found the facts to be contrary to Koch's claims as to fraud, conspiracy, or an attempt to mislead.

The appellant asserts also that Arthur Young should be held liable by reason of its negligence. On this point Koch urges factors in the financial report other than those relating to the Canadian receivables, and thus for these errors and misleading material Arthur Young was liable to Koch.

■ The trial court found that the accounts generally were "fairly stated in accordance with generally accepted accounting principles." The form of the report was criticized, but, as indicated above, the trial court found there was no attempt by Arthur Young to mislead Koch. Contrary to the arguments advanced by Koch, the trial court made no finding of fact which would serve as a basis for a conclusion that Arthur Young was negligent. The court did conclude that Arthur Young did not follow standard accounting principles in not separately stating the Canadian receivables, but the court also concluded that there could be no recovery against Arthur Young "if this be 'negligence.' " The record shows that the report was

prepared in connection with Vosko's proposed sale to Occidental, and this was the only purchaser known to Arthur Young when the report issued. Thus Koch was a complete stranger to Arthur Young at the issuance of the report. The trial court applied Kansas law on this point, thus holding that E. T. Arnold & Co. v. Barner, 91 Kan. 768, 139 P. 404, and Mallory v. Ferguson, 50 Kan. 685, 32 P. 410, expressed the present rule in Kansas. Both parties and the trial court cite and discuss Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931). It also appears from the record that the law in the Bahamas is basically the same. Hedley, Byrne & Co., Ltd. v. Heller & Partners, Ltd., [1964] A.C. 465, [1963] 2 All E.R. 575. Arthur Young & Company had appended qualifying notes as to the non-Canadian "receivables" (Safari, Hess, and the Italian claim).

As to the claim against Arthur Young, the same consequences follow from the subsequent acts of Koch, its silence, its work with Arthur Young, and the reaffirmance of the initial agreement in subsequent modifications.

■ This leaves the challenge by Koch to an award by the trial court to Arthur Young, a "servant" of Atlas Pete, as indemnity for the costs and expenses of litigation. This award was in the amount of $466,260.65, and was entered directly against Koch Industries. The appellant argues that such an award is against public policy in Kansas, also under the Securities Act, and that Arthur Young was not the "auditor" or a servant of Atlas Pete, and thus not entitled to indemnity under Article 84 of the Charter of Atlas Pete.

The award of indemnity to Arthur Young is in accord with Kansas law. Talley v. Skelly Oil Co., 199 Kan. 767, 433 P.2d 425; Hunter v. American Rentals, Inc., 189 Kan. 615, 371 P.2d 131; K.S.A. § 17–6305 (1972 Cum. Supp.).

As to federal law relating to the Securities Act claims, we find no policy contrary to an award to a party for legal expenses in successfully defending. Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir.), is not contrary. The court there said: "Thus it is important to emphasize at the outset that at this time we consider only the case where the underwriter has committed a sin graver than ordinary negligence." This issue was tried as an indemnification matter only, and the Bahamian law permits such recovery against a company there organized under these circumstances. Arthur Young & Company conducted the audit for the preparation of this report for Occidental, and they were formally engaged to do so. They were thus within the scope of the indemnity provision in the charter. Again there was no finding or conclusion that Arthur Young & Company was negligent. Since the award was not against public policy in the forum, was in accordance with Bahamian law, and no challenge was made to the fact that the costs were incurred, it must be upheld on this appeal. Proof was introduced to support the claimed amount. The award was against Koch Industries, and this is also proper in view of the manipulation by Koch of Atlas Pete assets and statements made during trial as to the judgment.

We find no merit in Arthur Young's cross-appeal for prejudgment interest. Arthur Young in its cross-appeal seeks a holding that it is entitled to a continuing guarantee to include its expenses on this appeal. We have held it entitled to indemnity and this would extend to the conclusion of the litigation; however, in view of the amount awarded by the trial court, and as compared to that awarded Vosko, any additional amount would be nominal.

The case is reversed and remanded only to eliminate the indemnity to defendant Vosko, and to eliminate the setoff applied to the damages otherwise awarded defendant Vosko. The judgment is in other respects affirmed. It is so ordered.