(660 P.2d 1380)
No. 54,502

MID-AMERICA SPRAYERS, INC., *Plaintiff/Cross-Appellee,* v. UNITED STATES FIRE INSURANCE COMPANY and AVIATION OFFICE OF AMERICA, INC., *Defendants/Appellants/Cross-Appellees,* v. PRATT & WHITNEY AIRCRAFT OF CANADA, LTD., *Third-Party Defendant/Appellee/Cross-Appellant.*

Opinion filed March 17, 1983.

*Randy J. Troutt,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for the appellants/cross-appellees.

*Charles W. Harris,* of Curfman, Harris, Stallings, Grace & Snow, of Wichita, for the appellee/cross-appellant.

*M. Duane Coyle,* of McMaster & McMaster, of Wichita, for the cross-appellee.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by defendants and third-party plaintiffs, United States Fire Insurance Company and Aviation Office of America, Inc., and a cross-appeal by third-party de-

fendant, Pratt & Whitney Aircraft of Canada, Ltd., from an action originated by plaintiff, Mid-America Sprayers, Inc., against its insurer alleging coverage for damages to an aircraft.

On April 24, 1979, plaintiff Mid-America Sprayers, Inc., and the third-party defendant Pratt & Whitney Aircraft of Canada, Ltd., executed a property rental agreement for the lease of an aircraft engine manufactured by Pratt & Whitney. Defendants United States Fire Insurance Company and Aviation Office of America, Inc. (hereinafter referred to collectively as either defendants or USFIC), are insurance companies which had issued a policy of insurance on the aircraft in which Mid-America installed the engine leased from Pratt & Whitney. The subject airplane crashed and was totally destroyed on June 29, 1979.

On October 17, 1979, Mid-America filed a petition in the District Court of Sedgwick County against defendants alleging coverage under the insurance policy for property loss resulting from the crash of the subject aircraft. After filing an answer denying coverage based upon an exclusion in the insurance policy, USFIC moved to join Pratt & Whitney as a third-party defendant to the action. USFIC filed a third-party complaint alleging that if USFIC was found to be liable to Mid-America, then USFIC would be subrogated to all rights of Mid-America against Pratt & Whitney. USFIC further alleged that Pratt & Whitney was or would be liable to USFIC for all or part of the damages claimed by Mid-America because of a manufacturing defect in the leased engine. USFIC alleged negligence, breach of warranties and strict liability.

On June 5, 1981, Pratt & Whitney filed a motion to dismiss, contending that under the terms of the property rental agreement Mid-America had waived any claim for damages to its property or personnel resulting from the performance, use or operation of the engine leased to Mid-America. The agreement also provided that Mid-America would save harmless Pratt & Whitney, its officers, directors and employees, from all liability, claims, actions, and damages, whether arising in tort or otherwise.

The trial court denied Pratt & Whitney's motion to dismiss, finding that enforcement of the exculpatory clause found in paragraph 5(c) of the agreement would violate public policy. The court found the clause to be void and unenforceable.

On February 10, 1982, Pratt & Whitney filed a second motion

to dismiss the third-party complaint, alleging that the cause of action for subrogation was prematurely brought. The trial court treated the motion as one for summary judgment, sustained it, and dismissed the third-party complaint.

Defendants appeal the ruling of the court, arguing that they may bring a third-party action based upon their right of subrogation prior to actually paying Mid-America or suffering a judgment which requires payment. Pratt & Whitney has cross-appealed, contending that the ruling made in the trial court's order refusing to grant its first motion to dismiss is in error. We will first discuss the cross-appeal.

The pertinent parts of the contract between plaintiff and Pratt & Whitney are as follows. From the Property Rental Agreement:

"1. P&WC hereby leases to Mid-America Sprayers, Inc. and Mid-America Sprayers, Inc. leases from P&WC the following property: PT6A-34 bearing P&WC Serial No. 38002 which upon delivery to Mid-America Sprayers, Inc. shall be deemed received in good condition, save for latent defects, if any, which are provided for in the Standard Conditions on the back hereof, which property is hereinafter referred to as 'said property';

. . . .

"8. LIABILITY FOR PROPERTY:

"Except as specifically provided in Clause 3, Warranties, Remedies and Limitations printed on the reverse of Page 1 hereof, Lessee shall be responsible for all loss of or damage to said goods howsoever caused from the time of its delivery to the Lessee until its return to P&WC as provided herein. In the event of such loss or damage, Lessee shall promptly return said property if possible and shall promptly reimburse P&WC for its costs of repair or replacement of said goods up to amount not exceeding _____ _____. Lessee shall pay all transportation costs to and from the place of delivery.

"9. INSURANCE:

"The Lessee shall provide all risk insurance on this property, including transportation, aircraft ground coverage, flight risk and fire insurance (with extended coverage) for the full value of this property. The Lessee shall furnish evidence satisfactory to P&WC prior to delivery by P&WC of the said property that such insurance coverages are in force.

"10. CERTIFICATION OF INSURANCE:

"Lessee certifies that he carries public liability insurance in a minimum amount of $2,000,000.00 and shall produce proof of such insurance upon request of P&WC.

"11. WAIVER OF LIABILITY:

"Lessee waives any claim for damages to its property or personnel resulting from the performance, use or operation of the said property and in the event that said property is re-rented or assigned by Lessee if permitted by this agreement, or if said property is used in aircraft in which personnel other than Lessee's

personnel are operators or passengers, Lessee shall arrange to obtain from its assignees, sub-lessee or personnel or operators other than Lessee's personnel a similar waiver for the benefit of P&WC."

And from "Exhibit A" of the Property Rental Agreement:

"5. (a) Upon delivery of Said Property to Lessee as provided in the purchase order, Lessee shall assume all risks of damage to or loss of Said Property from the time of such delivery until its return to P&WC.

. . . . .

"(c) P&WC assumes no liability of any nature or kind for the performance, use, or operation of Said Property, and Lessee agrees to save P&WC, United Technologies Corporation, and their directors, officers and employees harmless from all liability, claims, actions, damages, whether arising in tort or otherwise, and expenses to or by third persons in connection with the use of Said Property. Lessee waives any claim to damages to its property or personnel arising out of the operation and use of Said Property."

Third-party defendant Pratt & Whitney contends in its cross-appeal that the trial court erred when it found the exculpatory clause in paragraph 5(c) of exhibit A of the property rental agreement to be violative of public policy and therefore void and unenforceable. The subject clauses involved are those set out above. Pratt & Whitney maintains that this exculpatory clause does not violate any stated public policy and therefore should be enforced, thus permitting its dismissal from this action. We concur. An examination of the precedent in this area supports this conclusion.

In *Hunter v. American Rentals,* 189 Kan. 615, 371 P.2d 131 (1962), the defendant corporation was engaged in the business of renting trailers to the general public, including trailer hitches and all other attendant equipment necessary to connect trailers to automobiles. The plaintiff went to the defendant and rented a trailer and had defendant attach it to his automobile. The trailer hitch failed upon use, causing an automobile accident which resulted in personal injury and property damage. It was later discovered that the failure of the hitch was in apparent violation of G.S. 1949, 8-5,118 which provided in part:

" '(a) When one vehicle is towing another the drawbar or other connection shall be of sufficient strength to pull, stop and hold all weight towed thereby, . . . (b) In addition to the drawbar connections between any two such vehicles there shall be provided an adequate safety hitch. . . .' " p. 617.

The plaintiff sued defendant American Rentals alleging negligence. The defendant answered, seeking to avoid liability based

on an exculpatory clause contained in the rental agreement. The clause stated in part:

" 'The renter hereby absolved the AMERICAN RENTALS of any responsibility or obligation in the event of accident, regardless of causes or consequence, and that any costs, claims, court or attorney's fees, or liability resulting from the use of described equipment will be indemnified by the renter regardless against whom the claimant or claimants institute action.

. . . .

" 'AMERICAN RENTALS makes no warranty of fitness or usage, express or implied. The undersigned received said property in its present condition and waives all claims present and future against AMERICAN RENTALS including those resulting from defects, latent or apparent.' " p. 616.

The court held that the clause was in contravention of the public policy of the state and was void and unenforceable, and constituted no defense to the action. The court stated its reasoning as follows:

"Contracts for exemption for liability from negligence are not favored by the law. They are strictly construed against the party relying on them. The rule is unqualifiedly laid down by many decisions that one cannot avoid liability for negligence by contract. The rule against such contracts is frequently limited to the principle that parties cannot stipulate for the protection against liability for negligence in the performance of a legal duty or a duty of public service, or where the public interest is involved or a public duty owed, or when the duty owed is a private one where public interest requires the performance thereof. (17 C.J.S., Contracts, § 262; 12 Am. Jur., Contracts, § 183.) There is no doubt that the rule that forbids a person to protect himself by agreement against damages resulting from his own negligence applies where the agreement protects him against the consequences of a breach of some duty imposed by law. It is, of course, clear that a person cannot, by agreement, relieve himself from a duty which he owed to the public, independent of the agreement. (*Murray v. The Texas Co.*, 172 S.C. 399, 174 S.E. 231.) An analysis of the decisions indicates that even under the view that a person may, under some circumstances, contract against the performance of such duties, he cannot do so where the interest of the public requires the performance thereof. (12 Am. Jur., Contracts, § 183.)

"Under the statute the defendant, being engaged in the business of renting trailers to the general public, including trailer hitches and other attendant equipment necessary to connect the rented trailers to the automobiles, owed a duty, not only to the plaintiff but also to the general public, to see that the trailer hitch was properly installed and the trailer properly attached thereto in order that the same might be safely driven on the highway for the purpose and use for which it was intended; and defendant, by contract, could not relieve itself from its negligent acts of failing to make those safe connections and installations. The contract on the part of the defendant to relieve itself from such negligent liability is against the public policy of this state and void. (*Nashua &c. Paper Co. v. Noyes Co.*, 93 N.H. 348, 41 A.2d 920.)

"It is apparent that the mentioned statute was passed for the protection of the

public; that the business in which the defendant is engaged, *i.e.*, that of renting trailers to the public, is one where the interest and safety of the public must be kept in view; and, where one violates a duty owed to the public, he may not come into a court of law and ask to have his illegal contract, exempting him from liability to comply with such duty, carried out. The law will not aid either party to an illegal agreement. (17 C.J.S., Contracts, § 272.) If an agreement binds the parties, or either of them, to do something opposed to the public policy of the state, it is illegal and absolutely void. (17 C.J.S., Contracts, § 211; 12 Am. Jur., Contracts, § 167.) An agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety.

"In *Murray v. Brown*, 177 Kan. 139, 276 P.2d 344, this court held that no action may be maintained, either at law or in equity, to enforce a contract or agreement made in contravention of law. (See, also, *Bradley v. Minor*, 173 Kan. 236, 245 P.2d 1206, 30 A.L.R.2d 1224.) To allow defendant to escape liability by reason of its alleged contract would be defeating the purpose and intention of the legislature as provided in the mentioned statute.

"In the instant case the public was concerned with the security of its citizens as to use of the trailer on the highway. The public had a right to expect and demand that defendant, being engaged in a public service, would comply with the statute and see that the trailer hitch was of sufficient strength and the trailer properly attached so as to be safe for its use. (*Otis Co. v. Maryland Co.*, 95 Colo. 99, 33 P.2d 974.)

"A contract, such as the one in the instant case, does not change the law of public liability. No such opportunities are extended; neither can they be made a privilege by contract. By defendant's own contract, if construction were allowed, plaintiff paid to place himself at the mercy of and subject to the negligence and carelessness of the defendant's agent in connecting the trailer to his automobile. (*Otis Co. v. Maryland Co.* [95 Colo. 99].)" pp. 617-19.

In *Talley v. Skelly Oil Co.*, 199 Kan. 767, 772-73, 433 P.2d 425 (1967), the court qualified the rule stated in *Hunter:*

"The rule pronounced in *Hunter* recognizes a well defined exception to the general principle that exculpatory agreements voluntarily entered into by parties standing on an equal footing are *enforceable as between the contracting parties themselves.* (See 17 Am. Jur. 2d, Contracts, § 188, pp. 556, 557.) This exception finds expression in Restatement, Contracts, ch. 18, § 575, pp. 1080, 1081:

" '(1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if

. . . .

" '(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation.'

"No contention has been advanced in this case that the exonerating clause in the Skelly lease contravenes any Kansas statute, nor has our attention been called to any such enactment. *In the absence of legislative expression on the subject we discern no public policy which is violated by the clause in question.*

"The prevailing rule so far as leases are concerned is stated in 6 Williston on Contracts, (Rev. ed.) § 1751C, pp. 4968, 4969:

" 'Though the relationship of landlord and tenant is such that its incidents have been regulated by statute to some extent, it is clear that apart from statute a landlord may at common law exempt himself from negligence. . . .' " (Emphasis supplied.)

In *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 327-330, 582 P.2d 1111 (1978), the court discussed the law concerning exculpatory clauses:

"We turn now to the related issue of whether the exculpatory clauses in paragraphs seven and eight of the work order altered the legal relationship of the parties.

"In *Kansas City Structural Steel Co., v. L.G. Barcus & Sons, Inc.*, 217 Kan. 88, 535 P.2d 419 (1975), we said:

" 'The policy of the law in general is to permit mentally competent parties to arrange their own contracts and fashion their own remedies where no fraud or overreaching is practiced. Contracts freely arrived at and fairly made are favorites of the law. (*Kansas Power & Light Co. v. Mobil Oil Co.*, 198 Kan. 556, 426 P.2d 60.) None of the parties here involved were neophytes or babes in the brambles of the business world. Both companies, it would appear, dealt in projects involving considerable sums of money; both operated substantial business enterprises; and there is no question that their businesses were not capably managed and profitably operated. The trial court did not find the limitation on damages imposed by the exculpatory clause was unconscionable, and we cannot view it as such. The limitation imposed was not total and was agreed upon by parties standing on equal footing.' (p. 95.)

"However, it should be noted that *Kansas City Structural Steel* involved a delay of delivery issue and a limitation of liability for damages arising therefrom. Further, it arose under the provisions of the Uniform Commercial Code. *Active negligence was not involved.*

"*Hunter v. American Rentals,* 189 Kan. 615, 371 P.2d 131 (1962), involved a rental of a trailer and hitch by a rental company to an individual. The trailer hitch broke. The rental agreement absolved the rental company of any responsibility in the event of accident. This court found that such a contract limiting liability for consequences of one's own negligence was 'void as against public policy.' Public policy was determined by a statute requiring certain standards for trailer hitches and connectors.

"*Hunter* was distinguished in *Talley v. Skelly Oil Co.,* 199 Kan. 767, 433 P.2d 425 (1967), in which this court said:

" 'As a general rule, an exculpatory clause in a lease voluntarily executed between parties standing on an equal footing, under the provisions of which clause the lessee agrees to indemnify the lessor against risk, loss, damage or injury occurring on the leased premises during the term of the lease, whether or not caused by the lessor's negligence, is a valid clause and enforceable between the parties themselves.' (Syl. 1.)

"This court noted that *Hunter* was a well-defined exception to the general rule. There was no contention in *Talley* that the lease in question contravened any

statute and no 'public policy' question was involved. *Talley* involved injury to a third party during lessee's use of the premises. Lessee had complete, actual control over the premises. This factual situation is materially different from the facts at hand wherein lessor retains control of the leased equipment which requires special skill and training to operate, and the operation thereof is potentially dangerous.

"As to '*public policy*,' this court defined it in *In re Estate of Shirk*, 186 Kan. 311, 350 P.2d 1 (1960):

"*Public policy forbids enforcement of an illegal or immoral contract, but it equally insists that those contracts which are lawful and which contravene none of its rules shall be enforced,* and that they shall not be set aside or held to be invalid on a suspicion of illegality.

" 'A contract is not void as against public policy unless injurious to the interests of the public or contravenes some established interest of society.' (Syl. 5, 6.)

"The rule seems to be that, unless against public policy, a contract exempting liability will be enforced, however, it will be enforced very strictly. In *Cason v. Geis Irrigation Co.*, 211 Kan. 406, 507 P.2d 295 (1973), we said:

" 'Contracts for exemption from liability for negligence are not favored by the law and are strictly construed against the party relying on them.' (Syl. 1.)

"In *Kansas City Power & L. Co. v. United Tel. Co. of Kan., Inc.*, 458 F.2d 177 (10th Cir. 1972), a Kansas case, the court found that the specific indemnification clause was not broad enough to require indemnification for losses occasioned by the company's own negligence. The court said:

" 'The general rule is that private contracts exculpating one from the consequences of his own acts are looked upon with disfavor by the courts and will be enforced only when there is no vast disparity in the bargaining power between the parties and the intention to do so is expressed in clear and unequivocal language. [Citations omitted.] However, the courts have not agreed upon the language necessary to manifest such an intent. . . .' (p. 179.)

. . . . .

"A summary of the law in this area is provided in 17 Am. Jur. 2d, Contracts, § 188:

" 'Generally, parties may agree to waive contract, statutory, or other rights unless a question of public policy is involved.

" 'It is not the rule that any agreement by any person which assumes to place another person at the mercy of his own faulty conduct is void as against public policy. However, the law does not look with favor on provisions which relieve one from liability for his own fault or wrong. It is a well-settled general doctrine that the law will not sustain a covenant or immunity which protects against fraud or relieves one of a duty imposed by law for the public benefit. It has been held that clauses limiting liability are given rigid scrutiny by the courts, and will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into; this is especially true where the contract involves services of a public or semipublic nature, but has also been applied in some controversies involving private contracts, particularly where, as in the case of a public or semipublic contract, the private contract is the only means one of the parties has of filling an important need. A release may be void as against public policy, as where an employer, carrier, or professional bailee is released from liability for future negligence. . . .

" 'An agreement that facts which the law declares establish a certain relationship do not establish that relationship is void. A person may not shield himself from liability to a third party merely by stipulating with another that he is something which in reality he is not.' (pp. 556-557.)" (Emphasis supplied.)

In the present case, defendants do not offer any statutory statement of public policy. The negligence alleged stems from the alleged defective manufacture of the airplane engine rented by plaintiff which allegedly caused the plane in which the engine was installed to crash. Defendants turn to the adoption of strict liability for defective manufacture of products which are placed into the marketplace as a statement of public policy of which the subject exculpatory clause is violative. In *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976), the court adopted the doctrine of strict liability as set out in the Restatement (Second) Torts § 402A (1965):

" '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

" '(a) the seller is engaged in the business of selling such a product, and

" '(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

" '(2) The rule stated in Subsection (1) applies although

" '(a) the seller has exercised all possible care in the preparation and sale of his product, and

" '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The importance of the adoption of § 402A is the abandonment of the requirement of privity of contract. We find that its adoption does not constitute a statement of public policy which would prohibit a lessor, in the context of the present case, from limiting its liability to the lessee for negligence in the manufacture of a product.

The parties involved here are businesses. They are not "neophytes or babes in the brambles of the business world." *Kansas City Structural Steel Co. v. L. G. Barcus & Sons, Inc.,* 217 Kan. 88, 95, 535 P.2d 419 (1975). There has been no allegation of an unconscionable disparity in bargaining power. Unlike the defendant in *Hunter,* Pratt & Whitney is not performing a public service by manufacturing airplane engines. Its dealings with plaintiff have been strictly private in nature. It does not perform a service which concerns the general public at large, and no

injury to the general public as a result of the existence of the exculpatory clause has been alleged. A careful reading of the agreement in question reveals that the limitation of liability only pertains to the two parties. The clause does not prevent a potentially harmed third party, who may be a member of the general public, from bringing an action against Pratt & Whitney as the manufacturer of the engine. In such an event, the agreement provides that plaintiff will hold Pratt & Whitney harmless from all liability. The possibility for injury to the public as a result of the performance of its engine has also been taken into account by Pratt & Whitney through its insistence that plaintiff have proper public liability insurance in the amount of $2,000,000 on the craft in which the engine would be placed.

We find the contract in the present case, under the facts herein, to be lawful and enforceable. It does not violate any established statement of public policy. It is an acceptable allocation of risk entered into by two business parties standing on an equal footing. As such, the contract should be strictly enforced. We therefore find that the trial court erred by failing to dismiss the action on Pratt & Whitney's first motion. Accordingly, we need not consider the issue raised by defendants, since it is rendered moot.

The cross-appeal of third-party defendant is sustained, the trial court's dismissal of third party defendant is affirmed, and the appeal of defendants is dismissed.