No. 86,402

In The Matter of The ESTATE OF MAYNARD W. SNOOK,
Deceased.

(38 P.3d 684)

Opinion filed January 25, 2002.

*Dan E. Turner* and *Phillip L. Turner*, of Topeka, appellants, were on the brief pro se.

*George Voss*, of Dodge City, argued the cause and was on the brief for appellee Steven Riegel.

The opinion of the court was delivered by

BRAZIL, J.: In this probate proceeding, Dan Turner and Phillip Turner appeal the district court's refusal to allow their claims for attorney fees for $11,730 against the estate of Maynard Snook. According to the Turners, this amount represents the attorney fees associated with work the Turners performed in a foreclosure lawsuit against Snook initiated by Farmers State Bank (Farmers Bank) of Bucklin and in a bankruptcy action involving a reorganization of Snook's affairs under Chapter 12 of the Bankruptcy Code. The district court dismissed the Turners' petition, finding that no additional fees were approved by the bankruptcy court other than the $5,000 fee allowed in that action. Therefore, the court held, the Turners have no claim that survived the bankruptcy proceeding. Further, the court held that if their claim did survive the bankruptcy, it was not timely filed in the probate case. Steven Riegel, Snook's grandson, is the executor of Snook's estate. George Voss is the attorney for the estate.

This case has a long and tortured history. Farmers Bank sued Snook in Ford County, seeking to foreclose its mortgage on Snook's property on January 23, 1987. Snook signed Dan Turner's "Employment Contract Agreement" on February 20, 1987. The agreement provided for attorney fees to be calculated on an hourly basis of $100.

On March 4, 1987, Turner filed an "Original Petition under Chapter 12" on behalf of Snook in bankruptcy court. Following the filing of this document, the bankruptcy trustee sent a letter to Turner with a copy to Snook stating:

"[Y]our client . . . may not:

"a. Retain or employ attorneys, accountants, appraisers, auctioneers or other professional persons without court approval. This includes employing the attorney who filed the petition to provide services after the filing. See 11 U.S.C. § 327.

"b. Compensate any attorney, accountant, appraiser, auctioneer or other professional except as allowed by the court. See 11 U.S.C. § 330."

As the above language suggests, the Turners were on notice that compensation would have to be approved by the bankruptcy court.

On April 6, 1987, Turner filed a "Voluntary Petition under Chapter Twelve" which included a schedule of Snook's assets and liabilities. This document contained the following questions and answers regarding the agreement between the Turners and Snook on the matter of attorney fees:

"b. Have you during the year immediately preceding or since the filing of the original petition herein paid any money or transferred any property to the attorney, or to any other person on his behalf? (If so, give particulars, including amount paid or value of property transferred and date of payment or transfer.)
"Yes — $2,500 1-30-87
"Dan E. Turner
"c. Have you, either during the year immediately preceding or since the filing of the original petition herein, *agreed to pay* any money or transfer any property to an attorney at law, or to any other person on his behalf? (*If so, give particulars, including amount and terms of obligation.*) (Emphasis added.)
"Yes $5,000 upon filing."

These answers suggest the agreement was a flat fee, not an hourly fee as shown by the employment contract agreement quoted above.

Turner also filed an "Unsworn Declaration under Penalty of Perjury by the Attorney for the Debtor." This document contained the following questions and answers regarding the agreed attorney fees:

"1. That the compensation paid or promised to him for services rendered or to be rendered in connection with the case is as follows:
"$5,000.00 to Dan E. Turner for bankruptcy proceeding
"2. That the source of such compensation is as follows:
"Debtors Funds."

Dan Turner, on behalf of Snook, filed a "Chapter 12 Plan of Reorganization as of June 8, 1987" in the bankruptcy court. The plan of reorganization included the following paragraph regarding attorney fees:

"2. The Trustee shall first pay in full all claims entitled to priority as set forth in Title Eleven, Untied States Code, Section 507 unless the holder agrees to a different treatment. These claims shall be paid by deferred payments in such priority and installments as the Trustee in his sole discretion deems appropriate:
(a) Claims consisting of all claims entitled to priority under section 507(a)(1) and 503(b) of the Bankruptcy Code known as administrative expenses. *The administrative claims of the Chapter Debtor's attorney, shall not exceed an additional $5,000.00.*" (Emphasis added.)

Farmers Bank objected to Snook's attempt to take advantage of the homestead exemption. Its objection was overruled and the bank appealed to the federal district court on January 23, 1989. The federal district court finally affirmed the bankruptcy court's decision to allow the homestead exemption on November 15, 1991.

The bankruptcy court approved Snook's Chapter 12 plan on September 22, 1988, but it was not memorialized in a written form and filed until June 2, 1989. The bankruptcy court made this order subject to the final determination by the federal district court of the Farmers' Bank objection to Snook's homestead exemption.

The June 2, 1989, order confirming the Chapter 12 plan also contained the following language relevant to the Turners' attorney fees:

"11. The debtor's attorney fees and expenses will be paid over a period of time, *after an application has been filed with the Court and approved.*" (Emphasis added.)

As the Snook estate points out, the record does not show the Turners made any such application with the bankruptcy court.

As discussed below, Snook died on November 14, 1989. The bankruptcy trustee filed a motion to dismiss on or around January 24, 1990, asking the court to dismiss the bankruptcy case because Snook had died. The Turners opposed the trustee's motion and the bankruptcy court denied it on March 5, 1990, substituting Snook's probate estate for Snook.

On March 31, 1990, Turner sent Riegel a bill for $188.24 for copies and postage. The bill showed an earlier payment of $95.26 and a previous balance of $248.50. It does not indicate any request for hourly attorney fees.

Finally, the Chapter 12 trustee filed an order to discharge Snook's estate from Chapter 12 proceedings on March 17, 1992, showing the Snook estate made all payments as contemplated under the reorganization plan as scheduled.

Thus concluded, albeit temporarily, the proceedings before the bankruptcy court.

Following Snook's death, Riegel, the appointed executor under Snook's will, filed a petition to probate the will on November 30,

1989, and published notice of the petition on December 1, 1989, December 8, 1989, and December 15, 1989. Thus, April 1, 1990, was the end of the claim period. See K.S.A. 59-2239(1).

On September 6, 1990, Turner filed a petition to allow his demand for attorney fees in this probate case. His petition asked the court to award him $16,730 "[f]or representation of the deceased *prior to his death and the obtaining of an Order Confirming the deceased's Chapter 12 Plan of Reorganization.*" (Emphasis added.) Turner later amended the petition to reflect the fact Snook had already paid him $5,000—$2,500 as a "retainer" and $2,500 as a "payment."

On June 15, 1992, Riegel filed the petition for final settlement which announced Riegel's intention of not paying the Turners any legal fees because the claim was not filed within 4 months of the first published notice. Notice of the above petition was published on June 18, 1992, June 25, 1992, and July 2, 1992.

On July 10, 1992, Turner filed a lawsuit in Shawnee District Court, naming Voss, Riegel individually, and Riegel as the executor of the Snook estate. The Turners' petition asserted that Riegel and Voss, on behalf of the estate, had authorized Turner to continue to represent the Snook estate in the Chapter 12 proceeding and, in a related appeal, to the federal district court. The petition sought to recover attorney fees in the amount of $11,730. The record is not clear but apparently nothing became of this litigation.

On July 13, 1992, Turner filed his objection to the petition for final settlement in the probate case. The objection described the Shawnee County lawsuit and argued the petition for final settlement should, therefore, not be granted. The Turners filed a brief in support of the claim on September 8, 1992.

On September 17, 1992, Riegel filed a reply brief with attachments. This reply brief contained Riegel's affidavit, which provided in part:

"3. Your Affiant was present when M.W. Snook executed the *alleged* Employment Contract Agreement attached as Exhibit 1 to the Petitioners' Brief. That the contract was explained to M.W. Snook, Kenneth Snook, Larry Snook and your affiant as the authorization of M.W. Snook to be billed for expenses monthly in addition to the 'turn-key' fee of Dan E. Turner for the bankruptcy proceeding

of $5,000.00. That M.W. Snook during his lifetime, and Steven B. Riegel, as executor of the Estate of M.W. Snook, did pay such monthly expenses as they were billed pursuant to that agreement as explained. *M.W. Snook did not get a copy of Exhibit 1.*

. . . .

"6. When Steven B. Riegel received the first notice of any fees due Dan E. Turner, he telephoned Dan E. Turner at his office in Topeka and was told by Dan E. Turner, 'not to worry about it'. He (Turner) did not know anything about the billing, but his 'girls' had obviously made a mistake. Your affiant was present, along with Larry Snook and Kenneth Snook, when M.W. Snook was told by Dan E. Turner that the entire fee for the bankruptcy proceeding would be $5,000.00, 'turn-key', 'whether it took 5 minutes or 5 years', but that the $5,000.00 must be paid 'up-front' before filing the Petition in bankruptcy." (Emphasis added.)

The magistrate judge issued its decision which held "the Turner Firm claim is to be allowed in as a duly exhibited demand." Inexplicably, this decision came over 1 year later on October 12, 1993.

The estate appealed the magistrate judge's decision to the district court for a de novo determination of the issues on October 14, 1993.

On December 19, 1994, Dan Turner filed a motion for stay in the district court to give him time to return to bankruptcy court to ask that court to resolve the attorney fees issue. The district court granted the motion for stay on the same day.

Following a hearing, the bankruptcy court denied Turner's motion to reopen the bankruptcy case for the determination of their attorney fees in the amount of $11,730. Ruling from the bench, Judge Robinson said in part:

"[W]hat you have articulated to me is that your cause is that you didn't file fee applications during the course of the bankruptcy and from reading the file that would apply even to the initial $5,000 which apparently you were paid before filing; and assess a consequence, *you are now in a position that you are seeking payment through a probate proceeding for fees that haven't been approved through the bankruptcy.*

"I reviewed the fee application and there are a number of entries that pertain to work that clearly is something that ought to be compensable through a 12. I am not going to decide whether the work on exemption litigation is compensable or not. I don't think cause has been shown to open it. By virtue of having none shown, there is no reason to file to reopen it, no reason I can see, was the kind of work you should have sought approval for fee application. I think whatever the debtor owed you at the time of the discharge which apparently is everything in

the fee application *would have been pursuant to section 1228*, you can go back to probate court and perhaps convince the probate court otherwise, but on the facts I show no cause to reopen and I am not going to make a decision on merits." (Emphasis added.)

At this point, Turner asked, "For clarification, for those fees that deal with the exempt property, is the court making a determination of whether or not they had to be submitted to the court or is the court leaving that to the probate estate?" Judge Robinson replied, "I am leaving that to the probate judge."

Following the above hearing, Voss submitted an "Order" which Judge Robinson signed. The order was filed in the bankruptcy court on February 16, 1995. The order stated:

"4. Whatever the debtor owed the applicants at the time of discharge, which apparently is everything in the fee application, has been discharged pursuant to Section 1228."

Later, Judge Robinson specifically disapproved of the above language, and held in her own order filed March 13, 1995:

"The Court finds that the February 16, 1995 Order did not properly reflect the Court's ruling at the February 2, 1995 hearing. The Court did not rule that all attorneys' fees incurred in the defense of the debtor's exemptions are discharged. The Court noted that the issue was open to question whether all attorneys' fees were discharged *since none were allowed* during the bankruptcy case. *However, the Court indicated that the probate court could determine whether attorneys' fees which were not allowed in bankruptcy would nevertheless be payable in probate court.* To the extent that § 4 of the February 16, 1995 Order represents that attorney's fees are discharged, that paragraph should be stricken from the Order." (Emphasis added.)

The Turners relied on the bankruptcy court's amended order to argue in the probate case that the services performed were personal to the debtor, not benefitting the estate and, therefore, not properly compensable from the bankruptcy estate. The estate replied that the attorney fees should not be allowed even if the bankruptcy court refused to reach the issue.

The district court finally issued its "Memorandum Opinion on Motion to Dismiss" on October 30, 2000. In this opinion, the court found:

"The claim language was specifically *for representation of the decedent prior to his death and the obtaining of an order confirming the Chapter 12 plan of bankruptcy.* An amended version of the claim was filed on December 20, 1990, reciting the same claim but reducing it by $5,000. A significant omission from both the claim and the amendment is an allegation that services were provided in the bankruptcy case at the request of the executor after the death of the decedent."

The district court's "Order of Dismissal" relied, *inter alia,* on the fact that the bankruptcy court did not approve the Turners' fees, therefore finding the Turners were barred from trying to collect the fees later in probate court. It also found that even if the claim had merit under bankruptcy law, their claim was barred in the probate case under the nonclaim statute. The district court dismissed the Turners' petition on November 15, 2000, and the Turners appealed.

The Turners argue the district court erred in not finding there was an employment contract which was based on an hourly rate between them and Snook which was adopted by the estate after Snook's death. The Turners assert in their brief on appeal that Riegel orally agreed on approximately February 1, 1990, that Snook's estate would pay for the Turners' fees accrued before Snook's death and for any additional fees following his death.

The terms of a written contract can be varied, modified, waived, annulled, or wholly set aside by any subsequently executed contract, whether such subsequently executed contract be in writing or in parol. *Coonrod & Walz Const. Co., Inc. v. Motel Enterprises, Inc., et al.,* 217 Kan. 63, 73, 535 P.2d 971 (1975). Whether a term of a written contract has been modified or waived by a subsequent agreement is a question of fact for the trial court. *Belger Cartage Serv., Inc. v. Holland Constr. Co.,* 224 Kan. 320, 330, 582 P.2d 1111 (1978).

The Turners assert Voss orally represented on April 17, 1990, which was *after* the running of the probate statute of limitations, that the Turners did not have to file a claim for attorney fees until after the bankruptcy proceedings were completed. They contend they asked Voss on December 17, 1991, and March 25, 1992, when the attorney fees would be paid and that he indicated in a March 26, 1992, telephone conversation that the fees would be paid. The

Turners assert it was not until June 29, 1992, when they received a copy of the Snook estate's petition for final settlement that they realized that Riegel did not intend to pay the fees. In summary, it is the Turners' position that Voss and Riegel encouraged the Turners to continue work on the bankruptcy case, but at the same time planned to prevent the Turners from receiving compensation based on their failure to timely file a claim before the probate court.

The estate maintains the Turners orally represented to Snook and Riegel that the fee was a flat $5,000 fee. The estate expressly denies each of Turner's assertions.

The district court, in its order for dismissal, found that the "contract between Maynard Snook and Dan Turner was for $5,000 for professional services to be rendered in a Chapter 12 Bankruptcy proceeding" and that "[n]o effort was made to request approval of a reaffirmation of any new contract for attorney fees between the executor of the Snook Estate and the Turner Law Firm." Thus, the district court impliedly found Snook and the Turners had an arrangement that was at odds with the written contract. Furthermore, the district court impliedly found that Riegel did not agree to bind the estate to an hourly arrangement with the estate. These findings are supported by the record on appeal.

The Turners argue the written contract proves the arrangement was not for a flat $5,000 fee. The Turners assert in their brief on appeal that the fact the estate continued to pay the expenses related to the Turners' efforts in bankruptcy court proved the estate did not believe the arrangement was for a flat $5,000 fee.

Both the estate and the district court failed to address the language contained in the written contract. The estate, in its brief on appeal, refers to the contract as an "alleged contract." Riegel's affidavit explains the matter thus:

"3. Your Affiant was present when M.W. Snook executed the alleged Employment Contract Agreement attached as Exhibit 1 to the Petitioners' Brief. That the contract was explained to M.W. Snook, Kenneth Snook, Larry Snook and your affiant as the authorization of M.W. Snook to be billed for expenses monthly in addition to the 'turn-key' fee of Dan E. Turner for the bankruptcy proceeding of $5,000.00. That M.W. Snook during his lifetime, and Steven B. Riegel, as

executor of the Estate of M.W. Snook, did pay such monthly expenses as they were billed pursuant to that agreement as explained. M.W. Snook did not get a copy of Exhibit 1."

The remainder of Riegel's affidavit clearly supports the view that the actual agreement was contrary to the written agreement. For example, Riegel explains in his affidavit that when he met with Dan Turner on April 1, 1991, Turner, presumably in reference to the September 6, 1990, petition to allow his claim, said that the filing was merely a legal maneuver:

"At that time they were told by Dan E. Turner that he knew the fee arrangement, but he only filed the claim in the probate court because in case there was any money left in the probate account, he didn't want the bank to be able to get to it. At that time, the appeal of the Farmers State Bank of Bucklin in the bankruptcy court had not been decided. Again, Steven B. Riegel, Larry Snook and Kenneth Snook left the offices of Dan Turner feeling that the problem had been resolved and that Mr. Turner was just exercising some legal maneuver against the Farmers State Bank that they did not understand."

Certainly, the district court had evidence before it that the written agreement did not accurately represent the agreement either (1) between the Turners and Snook or (2) between the Turners and Snook's estate. Again, Riegel in his affidavit advised the court that Dan Turner assured Snook the fee arrangement was for a flat $5,000 fee. There is evidence to support the finding the Turners assented to such a modification by their own statements to Snook and his family and by their statements in the "Unsworn Declaration under Penalty of Perjury by the Attorney for the Debtor," which stated that the "compensation paid or promised" to be paid by Snook was $5,000. Documents the Turners submitted to the bankruptcy court belie their contention they had an hourly arrangement with Snook.

Regarding any oral agreement the estate may have made with the Turners, there is sufficient evidence to support the district court's rejection of the Turners' claims that the estate assured the Turners they would receive compensation for additional attorney fees.

Furthermore, the Turners' failure to obtain bankruptcy court approval of an hourly fee arrangement supplies sufficient evidence

to support the district court's findings. The Turners argue in their brief on appeal that they did not need to get the bankruptcy court's approval for fees to later claim them against the probate estate.

The Turners cite *Matter of Hunt,* 59 Bankr. 842 (Bankr. N.D. Ohio 1986). The court in *Hunt* considered an allowance of fees and expenses in a bankruptcy case under Chapter 7. Following the debtor's discharge in *Hunt,* the attorney filed a motion for approval of more fees. The court first subtracted from the fees requested an amount representing the pre-petition work, finding these services were covered by an initial payment. The remainder of the hours of service covered post-petition work "in connection with various reaffirmation agreements, *the allowance of exemptions,* redemption of personal property, and an adversary proceeding initiated by the Trustee objecting to the discharge of Debtor." (Emphasis added.) 59 Bankr. at 843.

Initially, the *Hunt* court isolated and distinguished two questions, a distinction missed by the Turners. First, the issue arose whether the above fees were properly paid from the bankruptcy estate by an application to the court or whether the client should be billed. Second, the court then considered what would happen if the fees were *not* compensable from the bankruptcy estate but, rather, properly compensable from the debtor:

"It is the request for payment for these services which raises the issue whether these matters are appropriately a subject of an application to this Court, or are they, rather, to be billed to the client? If they should be billed to the client, to what extent is counsel required to disclose the billing to the Court and to what extent and under what circumstances does the Court have an obligation to review that billing?" 59 Bankr. at 843.

The Turners fail to consider the *Hunt* court's distinction between the above two questions. The court first determined the services were personal to the debtor because the services failed to benefit the estate. Therefore, fees for these services were not compensable from the estate. 59 Bankr. at 843. The same appears in the present case. The work for which the Turners would like to bill Snook's estate also involved the allowance of exemptions which benefitted Snook, not the bankruptcy estate. However, this was not the end of the inquiry in *Hunt.* The court then went on to

answer the question of whether court approval was necessary for the fees which were compensable from the debtor personally. The court answered in the affirmative:

"The authority of the Bankruptcy Court to review compensation is a traditional power of the Court and is essential to avoid overreaching by a debtor's attorney. [Citation omitted.] Thus, *even in cases where services performed are not appropriately the subject of a fee application under Section 330, counsel nonetheless has a duty to disclose to the Court, under 11 U.S.C. Sec. 329, the amount of compensation paid or agreed to be paid in connection with the bankruptcy proceedings.* 11 U.S.C. §. 329(a)." (Emphasis added.) 59 Bankr. at 844.

The *Hunt* court found the attorney followed the dictate of 11 U.S.C. § 329 (1982) and therefore allowed the fees. 59 Bankr. at 844.

The Turners argue in their brief on appeal the services they performed were similar to those in *Hunt, i.e.,* personal to the debtor and, therefore, argue they were not required to get the bankruptcy court's approval. Again, this misses the point. Unless the rule is that services personal to the debtor need not be disclosed, and the Turners fail to cite any authority for this proposition which would be contrary to the rule in *Hunt,* the bankruptcy rules appear to clearly disapprove of fees which are not disclosed.

Furthermore, the bankruptcy rules require the attorney to update the information required to be disclosed by 11 U.S.C. § 329 (2000). See 11 U.S.C. § 329(a) and U.S. Bankruptcy Court Rule 2016(b) (2002). Without full disclosure as required in § 329(a) and supplemented through Rule 2016(b), the bankruptcy court has no capacity to know the reasonableness of the fees. It follows that it is improper for the Turners to try to collect these fees. Indeed, as the estate points out in its brief on appeal, the fees in this case amount to 19% of the probate estate.

In summary, the district court correctly determined the agreement was at all times a flat fee of $5,000. This finding is supported by the Turners' own representations to the bankruptcy court that the agreement was for a flat fee of $5,000 and their failure to ever inform the bankruptcy court that the fee arrangement had changed. Riegel expressly denied the Turners' allegations. Evaluation of witness credibility is for the finder of fact to determine.

See *Griffin v. Dale Willy Pontiac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999).

Next, Turner argues that they were entitled to notice of the filing of the petition to probate under K.S.A. 59-709(b). It provides:

"(b) The personal representative of a decedent's estate shall give actual notice to known or reasonably ascertainable creditors prior to the expiration of the non-claim statute."

K.S.A. 59-2236(b) provides:

"(b) Actual notice required by subsection (b) of K.S.A. 59-709, and amendments thereto, may include, but not be limited to, mailing a copy of the published notice, by first class mail, to creditors within a reasonable time after their identities and addresses are ascertained."

It is undisputed that the Turners were not given actual notice, but they failed to make a credible argument that the estate knew of their claim. Instead, they summarily announced, without citing any authority, that the estate knew of their claim. It appears the executor of Snook's estate did not know of the claim.

In Phillip Turner's March 5, 1990, letter to Riegel updating Riegel on the proceedings in bankruptcy court, he failed to mention the additional attorney fees. This letter was dated prior to the April 1, 1990 expiration of the claim period. Turner's April 17, 1990, letter to Voss, after the end of the claim statute, appears to first inquire about the attorney fees:

"I do not know where we stand in regard to Maynard Wayne Snook and the estate concerning payment of the attorney fees and expenses which have been incurred during the bankruptcy proceeding and the appeal of this proceeding. I do not know if we need to make a claim in the probate estate as to those attorney fees and expenses that remain unpaid by Maynard Snook. In addition, I do not know if we need to have the probate estate, through the Probate Court, approve an application for our employment to continue representing Maynard Snook in his bankruptcy proceeding now that he is deceased. We have gone ahead and filed the brief due to the time constraints in order to protect the interest of Maynard Snook and, in fact, responded to the Trustee's Motion To Dismiss successfully."

Thus, it is clear that the estate knew of the Turners' claim *after* the end of the claim period, and not before.

The estate, in its brief on appeal, also argues that the April 17, 1990, letter was the first mention of additional attorney fees. This

view is further bolstered by the fact that Dan Turner's March 31, 1990, letter to Riegel was a bill for $188.24 for expenses associated with the bankruptcy case. The bill was not for hourly attorney fees. The written notation on the letter indicates it was paid, and Turner does not assert on appeal the $188.24 was not paid. Thus, it is reasonable to assume the estate believed it was only responsible for the expenses and not additional attorney fees. If hourly fees were due, the Turners should have mentioned them earlier.

Other correspondence contained in the record on appeal is ambiguous. One letter to Voss inquired regarding attorney fees, but it is undated. Thus, it is difficult to draw any conclusions from that communication. In Dan Turner's June 4, 1990, letter to Voss, he does not mention attorney fees. Voss' letter the same date to Turner solicits Turner's advice on how to proceed in probate court without disrupting matters in bankruptcy court.

Last, that the order confirming the Chapter 12 plan required approval of attorney fees bolsters the estate's argument it did not know of the Turners' claim. Had the Turners' had a claim, they would have first sought bankruptcy court approval.

The estate asserts the Turners were not known or ascertainable creditors because they had never "talked with the executor or the attorney for the estate about additional attorney fees" during the claim period. Since the running of the claim period was April 1, 1990, the issue is whether the estate had notice of the Turners' intention to collect attorney fees for the amount above $5,000. The Turners' brief on appeal lacks any analysis of this particular question and gives this court no reason to suspect the lower court erred in its decision that the Turners were not known or reasonably ascertainable creditors. The district court did not err in denying the Turners' claim.

Last, the Turners argue the estate should be estopped from objecting to the additional fees. According to the Turners, Voss represented in February of 1990, that he would take no action in the probate estate until the federal district court had ruled on the trustee's motion to dismiss, which was based on Snook's death. Furthermore, the Turners assert both Riegel and Voss orally indicated Snook's probate estate would pay the Turners' fees and that the

Turners did not have to do anything to protect their claim for attorney fees until the proceedings in the bankruptcy court were terminated. The Turners imply they would not have continued to work in the bankruptcy case had they known of Voss' and Riegel's intentions not to pay attorney fees based on an hourly rate. Lastly, the Turners assert Riegel was motivated to mislead the Turners into continuing to work because without success in bankruptcy court, the probate estate would have had significantly fewer funds.

The Turners cite as their only authority for this argument *Gillespie v. Seymore*, 250 Kan. 123, 823 P.2d 782 (1991). The *Gillespie* court had the following to say about equitable estoppel:

> "Equitable estoppel is the effect of the voluntary conduct of a party whereby it is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party seeking to invoke equitable estoppel must show that the acts, representations, admissions, or silence of another party (when it had a duty to speak) induced the first party to believe certain facts existed. There must also be a showing the first party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *There can be no* equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved. Estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction." 250 Kan. at 129-30.

Ultimately, the *Gillespie* court held the doctrine inapplicable. 250 Kan. at 131-32.

This last argument fails as well. As the district court found, the estate had no notice that the Turners would assert any attorney fees above the $5,000 already paid. The Turners must show the estate acted in a way that made the Turners believe they would be paid the hourly attorney fees. This has not been shown. As the analysis above shows, the Turners represented to the bankruptcy court that the fee arrangement was for a flat $5,000. The Turners never supplemented this information to the bankruptcy court. Riegel in his affidavit asserted to the district court that he personally believed the arrangement was for a flat $5,000 fee and disclaimed that he agreed to any variation of this arrangement. Again, evaluation of witness credibility is within the prerogative of the district court. See *Griffin*, 268 Kan. at 34.

Affirmed.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.