(59 P.3d 1)
No. 88,475

CONTINENTAL WESTERN INSURANCE COMPANY; *Appellant,* v. KFS, INC., f/n/a KELLER SALES AND SERVICE, INC. f/n/a KELLER FIRE & SAFETY INCORPORATED, *Appellee.*

Opin-
ion filed November 15, 2002.

*E. Wayne Taff* and *Richard D. Fry*, of Sherman Taff & Bangert, of Leawood,
for appellant.

*James L. MowBray* and *Barry E. Warren*, of Wallace, Saunders, Austin, Brown
& Enochs, Chartered, of Overland Park, for appellee.

Before ELLIOTT, P.J., GREEN, J., and PADDOCK, S.J.

GREEN, J.: Continental Western Insurance Company (Continental Western) appeals from summary judgment entered in favor of KFS, Inc., f/n/a Keller Fire & Safety, Incorporated (KFS). On appeal, Continental Western argues that the trial court erred in granting summary judgment. We agree and affirm in part, reverse in part, and remand with directions.

This case arises out of a fire that occurred on the premises of Inland Pools & Spas, Inc., d/b/a The Spa Factory (The Spa Factory), in Olathe, Kansas, on July 17, 1998. On that date, Continental Western was the casualty insurer of The Spa Factory and, as a result of the fire, made payments to The Spa Factory totaling nearly $600,000. Continental Western brought this action against KFS claiming that at least part of the damages resulted from the failures of KFS in designing, manufacturing, installing, or inspecting a fire suppression system that did not activate on the day of the fire.

KFS installed the fire suppression system at The Spa Factory premises under an oral agreement negotiated between John Stroud for The Spa Factory and Julian Ray for KFS. No written contract regarding the installation existed. Ray made no agreement with Stroud or anyone else at The Spa Factory to limit KFS's liability or damages regarding the installation of the system.

The City of Olathe requires semiannual inspections of fire suppression systems by qualified individuals. Olathe Mun. Code § 16.05.010 (1998). KFS informed The Spa Factory that it was qual-

ified to conduct the required inspections. The Spa Factory entered into an oral contract with KFS to inspect the fire suppression system. Ray made no agreement with anyone at The Spa Factory to limit KFS's liability or damages regarding the inspection of the system.

After performing the last inspection before the fire, KFS allegedly presented a service agreement or work order to someone at The Spa Factory. Immediately above the signature line, the work order states:

"I HEREBY ACCEPT ABOVE PERFORMED SERVICE AS BEING SATISFACTORY AND ACKNOWLEDGE THAT EQUIPMENT HAS BEEN LEFT IN GOOD CONDITION. I HAVE READ, UNDERSTAND AND AGREE TO ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS DOCUMENT."

The "Terms and Conditions" delineated on the reverse side of the work order states, in part, as follows:

"8. _Integration_. This Invoice is the complete, entire, exclusive agreement and contract existing between the parties regarding the purchase and use of the material, equipment and services included in this Invoice and no oral or written representations, agreements, warranties, or covenants made prior to this Invoice by any party hereto is valid or enforceable unless it is attached to this invoice and made a part hereof."

The work order also contains the following provisions:

"6. _Limitation of Damages_. Unless otherwise prohibited by law, the liability of [KFS] for failure, incomplete performance or operation, or any other defect in the equipment or system, or its design, installation, maintenance or service, including, but not limited to claims for breach of contract, breach of express or implied warranties, strict liability, or negligence shall be limited to the reasonable expense of repairing and replacing the equipment, as [KFS] shall elect. In no event shall [KFS] be liable for any special, consequential or incidental damages, nor any liability for bodily injury, property damage or economic loss.

"7. WAIVER OF WARRANTIES. UNLESS OTHERWISE PROHIBITED BY LAW, NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY AS TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, IS MADE BY SELLER REGARDING THE MATERIAL, EQUIPMENT OR SERVICES INCLUDED ON THIS INVOICE, UNLESS SPECIFICALLY SET FORTH IN WRITING."

KFS moved for summary judgment, arguing that the limitation of damages and waiver of warranties provisions were valid and enforceable. Continental Western responded, arguing that the terms and conditions of the work order were not part of the installation or inspection contracts and cannot be construed to modify those contracts because they unilaterally modified the terms of the prior agreements and were not supported by a meeting of the minds or independent consideration. Continental Western further challenged the status of the work order as a contract. Finally, Continental Western claimed that the limitation provisions violated Kansas public policy and, as such, were void and unenforceable.

The trial court concluded that the work order was a contract between the parties or at least part of the agreement between the parties. The trial court further found that the limitation provisions were conspicuous and were not contrary to public policy. Consequently, the trial court granted summary judgment. The trial court later clarified that the work order governed the initial installation of the fire suppression system as well as the later inspections. The trial court further determined that the exclusionary and limiting clauses were not contrary to public policy.

Continental Western appeals, arguing that the trial court erred in granting summary judgment in favor of KFS. The standard of review for a motion for summary judgment is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

Continental Western first argues that the trial court erred in granting summary judgment because KFS failed to authenticate

the work order, which the trial court found to constitute a contract. Specifically, Continental Western contends that KFS failed to authenticate the work order because it did not establish the identity of the signatory, the signatory's authority to sign the document on behalf of The Spa Factory, and the signatory's authority to bind The Spa Factory to a contractual agreement. Continental Western maintains that without these affirmations, KFS failed to demonstrate that the work order was in fact a contract.

KFS responds by arguing that this issue was not preserved for appeal because Continental Western failed to argue to the trial court that the work order was not properly authenticated. Issues not raised before the trial court cannot be raised on appeal. *Dalmasso v. Dalmasso*, 269 Kan. 752, 765, 9 P.3d 551 (2000). A party cannot raise an issue on appeal where no contemporary objection was made and where the trial court did not have an opportunity to rule. *State v. Whitesell*, 270 Kan. 259, 283, 13 P.3d 887 (2000). Moreover, our Supreme Court has found that a party's failure to raise a question as to the authenticity of a document is a factor in demonstrating the document's authenticity. See, *e.g.*, *State v. Plaskett*, 271 Kan. 995, 1017-18, 27 P.3d 890 (2001).

Continental Western acknowledges that although it failed to object to the authentication of the work order, it argues that it did not waive any error in the authentication of the document because K.S.A. 2001 Supp. 60-256(c) requires the movant to present sufficient evidence to support its motion. Although 60-256(c) requires the movant to show that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law, Continental Western was required to object to the authentication of the work order to preserve the issue for appeal. As a result, we find that Continental Western waived any error in the authentication of the work order by failing to object below.

Continental Western next maintains that the trial court erred in determining that the work order constituted a contract between The Spa Company and KFS. Continental Western disputes that the work order constituted an agreement governing any aspect of the relationship between the parties and argues that the function

of the work order is confined to its facial appearance—a work order.

Continental Western argues that summary judgment was inappropriate because the issue of whether the work order constituted a contract was a question of fact. Whether a contract exists is a question of fact. *Reimer v. The Waldinger Corp.*, 265 Kan. 212, 214, 959 P.2d 914 (1998). As such, we find that the trial court erred in granting summary judgment because a factual question existed as to whether the work order constituted a contract between The Spa Company and KFS.

Continental Western next argues that even if the work order constituted a contract, the trial court erred in finding that the work order modified the prior oral contracts for installation and inspection of the fire suppression system.

The uncontroverted evidence indicates that the parties entered into oral agreements for the installation and future inspections of the fire suppression system. The evidence further indicates that the oral contracts contained no limitation of damages or disclaimer of warranties. The trial court apparently determined as a matter of law that the work order modified the prior oral agreements. However, whether a term of a contract has been modified or waived by a subsequent agreement is a question of fact. *In re Estate of Snook*, 272 Kan. 1256, Syl. ¶¶ 1, 2, 38 P.3d 684 (2002); *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 330, 582 P.2d 1111 (1978).

Moreover, as noted previously, the integration clause of the work order provides that "[t]his invoice is the complete, entire, exclusive agreement and contract existing between the parties *regarding the purchase and use of the material, equipment and services included in this invoice* . . . ." (Emphasis added.) Similar language is included in the waiver of warranties clause: "NO WARRANTY . . . IS MADE BY SELLER REGARDING *THE MATERIAL, EQUIPMENT OR SERVICES INCLUDED ON THIS INVOICE* . . . ." (Emphasis added.)

The work order indicates that the service included in the invoice is "fire system inspection." The work order further bills The Spa Company for equipment added or replaced during the inspection.

Specifically, the work order lists 15 fuse links, an S-hook assembly, and a remite break rod as the equipment or materials subject to the work order.

A trier of fact could interpret the integration and waiver of warranties clauses of the work order as limiting the scope of the work order to the material, equipment, and services included in the invoice. Instead of modifying the oral installation and inspection contracts as asserted by KFS, the work order could reasonably be interpreted by a trier of fact as an entire contract. When the evidence pertaining to the existence of a contract or the meaning of the terms of the contract is in dispute, or the evidence pertaining to the existence of a contract or the terms of the contract admit to more than one inference, a question is presented for the trier of facts. *Hays v. Underwood, Administrator*, 196 Kan. 265, Syl. ¶ 1, 411 P.2d 717 (1966). Because genuine issues of material fact exist as to the degree, if any, the work order modified the oral installation and inspection contracts, summary judgment was inappropriate.

Finally, Continental Western argues that the trial court erred in granting summary judgment after determining that the provisions of the work order did not violate public policy. Continental Western argues that KFS violated a duty owed to the public that was imposed by a city ordinance requiring inspection of fire suppression systems. Continental Western argues that if the court finds that the limiting language of the work order bars some or all of Continental Western's claims, then the court should find that KFS' attempt to evade responsibility is void as against public policy.

A contract will be voided only if enforcement would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents." *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 43, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987). The public policy of a state is the law of that state as found in its constitution, statutory enactments, and judicial decisions. *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001). Whether a result is contrary to public policy is a question of law subject to unlimited appellate review. *Danisco*

*Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 765, 986 P.2d 377 (1999).

Continental Western does not allege any violation of a statute, the constitution, or judicial decision, as the court in *Petty* found is necessary. Instead, Continental Western insists that this court should adopt as the public policy of this state, an ordinance of the City of Olathe. Continental Western fails to provide any authority for adopting the ordinance as public policy.

*Mid-America Sprayers, Inc. v. United States Fire Ins. Co.*, 8 Kan. App. 2d 451, 660 P.2d 1380, *rev. denied* 233 Kan. 1092 (1983), supports KFS's position that a statutory statement of public policy is ordinarily necessary. In that case, a limitation of liability clause in an airplane lease was held not to be in violation of public policy, in part, because there was no statutory statement of public policy that the clause offended. 8 Kan. App. 2d at 459-60. Similarly, because there was no statutory statement of public policy regarding the limitation of liability or warranty clauses contained in the work order, we find that the trial court correctly granted summary judgment on this issue.

Affirmed in part, reversed in part, and remanded for further proceedings.